In re FUNDING SYSTEMS ASSET
MANAGEMENT CORP.,
Debtor/Plaintiff,

v.

MINNESOTA MINING & MANUFAC-
TURING COMPANY, Defendant
and Third Party Plaintiff,

v.

TECHNOLOGY FINANCE GROUP,
INC. and Technology Finance
Leasing Corp., Third Party Defendants.

Bankruptcy No. 81–2861.
Ad. No. 84–410.

United States Bankruptcy Court,
W.D. Pennsylvania.

April 29, 1987.

M. Bruce McCullough, Buchanan Ingersoll, P.C., Pittsburgh, Pa., for debtor Funding Systems Asset Management Corp.

Pamela J. Giarla, Pittsburgh, Pa., for plaintiff Funding Systems Asset Management Corp.

George Cheever, Kirkpatrick & Lockhart, Pittsburgh, Pa., for defendant/third party plaintiff Minnesota Min. & Mfg. Co.

Gordon Locke, Westport, Conn., for third party defendants Technology Finance Group, Inc., and Technology Finance Leasing Corp.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before this Court is Third Party Defendants' (hereinafter "TFG") *Motion To Transfer to District Court.* The above-captioned adversary was originally filed by Debtor, Funding Systems Asset Management Corp. (hereinafter "Debtor"), against Defendant, Minnesota Mining & Manufacturing Company (hereinafter "3M").

Debtor seeks rental payments from 3M allegedly due pursuant to an Equipment Lease. Defendant 3M subsequently filed its Third Party Complaint against TFG, alleging that TFG is solely responsible for any rental payments under the Lease, or, in the alternative, that 3M is entitled to indemnification from TFG if 3M is found liable upon the Lease.

In its Answer, TFG requested a trial by jury. Thereafter, TFG filed the instant Motion To Transfer To District Court, which motion challenges this Court's jurisdictional authority to conduct a jury trial.

Based upon the arguments offered at hearing, the briefs submitted thereon, and this Court's research, we find that this Court has been granted the jurisdictional authority to conduct a trial by jury. However, we decline to do so in this case, due to our determination that the underlying proceeding is a "related" matter, making this Court's Findings Of Fact and Conclusions Of Law subject to *de novo* review by the district court. A jury trial would allow us to render an advisory Opinion only, resulting in a duplication of judicial process. Third Party Defendants' timely Motion To Transfer shall be and is granted.

## FACTS

On December 18, 1980, an Equipment Lease for certain IBM equipment was executed between Defendant 3M, as Lessee, and TFG, as Lessor. The initial Lease term ran from February 3, 1981 through August 31, 1984. Extensions were to be created which provided for automatic continuation beyond the initial term for successive monthly periods, unless and until terminated by 3M; termination to be effectuated by giving TFG not less than six (6) months' prior written notice.

On January 7, 1981, TFG assigned its right, title and interest, as Lessor, to the Debtor which subsequently assigned its right, title and interest to Union Bank. The original Lease provided that upon assignment, Lessor would notify Lessee to make lease payments in accordance with written instructions, and that no assignment would relieve the original Lessor of its duties as such.

On January 27, 1981, TFG notified 3M of its assignment to the Debtor and Debtor's subsequent assignment to Union Bank. The notice instructed 3M to send all rental payments due after March 1, 1981, to Union Bank, and similarly, to send Union Bank copies of all notices required to be sent by 3M pursuant to the Lease. TFG sent no instructions to 3M regarding equivalent notices to Debtor. Throughout the initial term, 3M and TFG communicated regularly regarding the lease of additional equipment, upgrading existing equipment, and delivery of new equipment.

3M forwarded all rental payments after March 1, 1981 to Union Bank. By letter sent certified mail, dated February 20, 1984, 3M notified TFG of its intent to terminate the Lease, effective August 31, 1984; a copy of this notice was also sent to Union Bank. TFG received 3M's notice on or about February 23, 1984, and confirmed the August 31, 1984 termination date with

3M by letter dated April 26, 1984. Accordingly, 3M remitted no rental payments after August 31, 1984.

Debtor filed bankruptcy under Chapter 11 of the Code on October 23, 1981. Debtor's adversary alleges that it received notice of 3M's intent to terminate on August 23, 1984. It therefore asserts that termination of the Lease would not be effective until February 28, 1985. Debtor alleges that 3M was in default for nonpayment during the period of September 1, 1984 through February 28, 1985, and claims rental payments in the amount of $43,222.50, plus sales and use taxes.

3M filed its Answer, denying default under the Lease; additionally, it filed a Third Party Complaint against TFG, alleging that TFG is solely liable to the Debtor under agency and contract theories or, in the alternative, that TFG must indemnify 3M, if 3M is in fact found liable upon the Lease.

TFG has timely requested a jury trial in its Answer to the Third Party Complaint, and has filed the instant Motion To Transfer To District Court, alleging this Court's lack of jurisdiction to hear a trial by jury.

## ANALYSIS

TFG has moved to transfer this case solely upon the basis that this Court lacks the jurisdiction to conduct a trial by jury. Debtor and 3M assert that this Court does in fact have such authority. We must first determine whether this Court has jurisdiction to hear this case; thereafter, assuming that we possess the requisite powers, we will consider the propriety of our hearing a trial by jury.

The nature of the underlying claim is an action in assumpsit: Debtor is seeking money damages for the alleged breach of an Equipment Lease.

Section 1334 of Title 28 vests all of the original Bankruptcy Jurisdiction in the U.S. District Courts. There are three (3) aspects of this jurisdiction which are clearly overlapping: § 1334(a) jurisdiction over cases; § 1334(b) jurisdiction over civil proceedings; and, § 1334(d) jurisdiction over property. We find that subject matter jurisdiction does reside in this Court, pursuant to Title 28 U.S.C. Sections 1334(b) and 157(a), whether this action is characterized as "core" or "related". Title 28 U.S.C. § 1334(b) states:

The district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

Title 28 U.S.C. § 157(a) further states:

[e]ach district may provide that any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

Local Rule 1002.1 states:

[a]ll bankruptcy matters originating in [various counties including Allegheny] shall be filed, docketed and processed in the bankruptcy clerk's office at Pittsburgh.

The legislative history makes it clear that § 1334(b), taken as a whole, constitutes an extraordinarily broad grant of jurisdiction to the Article III District Court. Said grant covers virtually all litigation in which a debtor or the estate could be expected to have an interest, and vests the court with a complete or pervasive jurisdiction over all matters having a relationship with or a significant bearing on the bankruptcy case. Therefore, whether a proceeding "arises under", "arises in" or is "related to" a bankruptcy case, this Court has been granted the jurisdiction to determine the issues presented.

Case law issued from the lower courts in this Circuit indicates that jury trials may be heard by the bankruptcy court in "core" proceedings *See, In re Kenval Marketing Corporation*, 65 B.R. 548 (Bankr.E.D.Pa. 1986); and "related" proceedings *See, In re George Woloch Company, Inc.*, 49 B.R. 68 (Bankr.E.D.Pa.1985).

In *Kenval*, the court emphasized that the Seventh Amendment to the U.S. Constitution protects the individual's right to a jury trial in "[s]uits at *common law*", and concluded that a party who petitioned the court for equitable relief, rather than common law money damages, was not permitted a jury trial. *Kenval, supra.* (emphasis

added). Further, the *Kenval* court held that, "... under BAFJA, bankruptcy courts may conduct jury trials in core proceedings which are legal in nature". *Id.* at 555. Debtor/Plaintiff is seeking money damages, not equitable relief. It follows, therefore, that if we find the instant proceeding to be "core", a jury trial would be appropriate.

The *George Woloch* court recognized that bankruptcy judges are now authorized to conduct jury trials, but noted that "bankruptcy courts are empowered to enter final decisions only in core proceedings". *George Woloch, supra* at 70. Therefore, the court concluded unless all parties consent to the bankruptcy court's entry of a final judgment, a jury trial in a related proceeding would result in "an advisory and possibly duplicative proceeding: it could, at most, culminate in a recommendation by the bankruptcy court to the district court for a final judgment". *Id.* Accordingly, if we conclude that the instant proceeding is "related", judicial economy dictates that we transfer it to the district court, unless consent of all parties to a final determination is obtained.

■ It remains for this Court to decide whether the instant proceeding is "core" or "related". As we determined in *In re F/S Airlease II, Inc.*, 67 B.R. 428, 431 (Bankr. W.D.Pa.1986), "pursuant to the Bankruptcy Amendments and Federal Judgeship Act of 1984 (BAFJA), and specifically Title 28 U.S.C. § 157(b)(3), this Court may, upon its own motion, determine if the action in question constitutes a core or related proceeding". A cursory view might indicate that the instant assumpsit claim would qualify as a "core" proceeding under Title 28 U.S.C. § 157(b)(2)(E) (orders to turn over property of the estate) or § 157(b)(2)(O) (other proceedings affecting the liquidation of the assets of the estate); for reasons hereinafter set forth, we find this proceeding to be "related" rather than "core".

■ The Debtor alleges that 3M owes rental monies pursuant to an Equipment Lease; the rights of the parties under the Equipment Lease must therefore be determined. It is unclear at this juncture whether Debtor's action will ultimately result in an award of property, which would thereafter become an asset of the estate. Our present inability to determine Debtor's right to back rental payments under the contract is precisely the element which prevents the instant proceeding from being characterized as a "turnover".

This is essentially the type of fact situation to which we alluded in *In re Allegheny, Inc.*, 68 B.R. 183 (Bankr.W.D.Pa.1986); wherein we determined that an action to collect an account receivable is a core proceeding, if it is "specific in its terms as to amount due and payable and date payable", so that it constitutes a matured debt. *Id.* at 190. We further stated, "If the debtor's claim lacked such certainty, an action for turnover might not be appropriate". *Id.* It is apparent that a trial will be necessary to determine the disputed and convoluted contract rights of these parties. Until such time as Debtor succeeds upon its cause of action, there will be no property for 3M to turn over. Therefore, the instant proceeding does not qualify as "core" under 28 U.S.C. § 157(b)(2)(E).

Although 28 U.S.C. § 157(b)(2)(O) may initially appear to confer "core" status upon this Debtor's claim, our analysis dictates otherwise. Section 157(b)(2))O) states in pertinent part:

> Core matters include, but are not limited to—other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor ... relationship ...

Debtor's claim technically falls within the letter of this particular provision; and there is no question, but that should the Debtor succeed upon its cause of action, the estate will have additional assets to distribute among creditors, thus affecting liquidation of the estate.

We must, however, distinguish this case from our holding in *Allegheny, Inc., supra.* In that case, we were truly dealing with an "adjustment of the debtor-creditor relationship"—Debtor claimed Defendant owed money, on account, and Defendant, while acknowledging withheld payments, asserted breaches of product warranties. In the

case at bar, 3M and TFG actively deny the existence of any account due and owing; hence, we have no established debtor-creditor relationship to adjust. This being so, we must decline to characterize Debtor's claim as "core", solely on the basis of 28 U.S.C. § 157(b)(2)(O).

Case law emanating from the Third Circuit indicates that this proceeding is, in fact, "related". The test to determine same is, "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy". *In re Bobroff,* 766 F.2d 797, 802 (3rd Cir.1985); *Pacor Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir.1984). As we have discussed, Debtor's successful prosecution of its cause of action would result in an increase of estate assets, thereby having an effect on the estate being administered in bankruptcy.

Because the instant proceeding is "related", we cannot enter a final decision after a jury trial, unless all parties consent thereto. *George Woloch, supra.* The pleadings and briefs submitted by TFG indicate that it would not consent to a final decision by jury trial in this Court.

> The notion that a jury trial is likely to produce a different result depending upon whether the presiding judge is a district court or a bankruptcy judge seems farfetched, but defendant ... is entitled to embrace it.

*George Woloch, supra* at 70.

Third Party Defendants' motion to transfer this proceeding to the district court shall be granted for the reasons stated herein.

An appropriate Order will be issued.