DAVIDSON PIPE COMPANY, INC., Davidson Pipe Supply Co. Inc., Davidson Oil Country Supply Co., Inc., Speciality Pipe & Tube, Inc., Speciality Pipe & Tube of Texas Inc., Herman Peter Davidson, and Jill Krueger, Plaintiffs,

v.

LAVENTHOL & HORWATH, Finalco Incorporated, Financial Analytics Corporation, Finalco Group, Inc., John F. Olmstead, John J. Prager, Lee B. Burnett, Stephen C. Eastham, Krypton Leasing Corporation, Decisions Incorporated, and Jeffry M. Picower, Defendants.

LAVENTHOL & HORWATH,
Third–Party Plaintiff,

v.

Stuart KRUEGER, Joel Klausner, Packer, Deislinger & Johnson, Cowin, James & Associates, Inc., and Tenzer, Greenblatt, Fallon & Kaplan, Third–Party Defendants.

Nos. 84 Civ. 5192 (LBS), 84 Civ.
6334 (LBS).

United States District Court,
S.D. New York.

March 17, 1989.

See also, D.C., 120 F.R.D. 455.

Steven M. Edwards, Gregory A. Markel, David Dunn, Davis, Markel & Edwards, New York City, for plaintiffs.

William Rand, Kevin W. Goering, Coudert Brothers, New York City, for defendants and third-party plaintiffs Finalco, Inc., Financial Analytics Corp., Finalco Group, Inc., John Olmstead, John J. Prager, Lee B. Burnett, Stephen C. Eastham.

Richard Marrin, Ford Marrin Esposito & Witmeyer, New York City, for third-party defendant Cowin, James & Associates, Inc.

Allen R. Freedman, Gordon Hurwitz Butowsky Weitzen Shalov & Wein, New York City, for defendants Krypton Leasing Corp., Decisions, Inc., and Jeffrey M. Picower.

Gerald Walpin, Eric J. Wallach, Rosenman & Colin, New York City, for defendant Laventhol & Horwath.

John Somoza, Siff, Rosen & Parker, P.C., New York City, for third-party defendant Packer, Deislinger & Johnson.

James W.B. Benkard, Davis Polk & Wardell, New York City, for third-party defendant Tenzer, Greenblatt, Fallon & Kaplan.

## MEMORANDUM AND ORDER

JAMES C. FRANCIS IV, United States Magistrate.

The plaintiffs in this action[1] allege that the defendants misrepresented or omitted material facts in connection with the sales of computer tax shelters. The plaintiffs asserted their right to a jury trial in the complaint. Two groups of defendants—the accounting firm of Laventhol & Horwath ("Laventhol") and the "Finalco" parties, consisting of Finalco, Incorporated, Finalco Analytics Corporation, Finalco Group, Inc., John F. Olmstead, John J. Prager, Lee B. Burnett, and Stephen C. Eastham—then filed third-party complaints against parties including the law firm of Tenzer, Greenblatt, Fallon & Kaplan ("Tenzer, Greenblatt"), alleging that any damage suffered by the plaintiffs was attributable to these third-party defendants. The third-party complaints did not include a jury demand. The question now in dispute is whether the issues raised in the third-party complaints will be tried to a jury or to the Court.

---

1. Originally, two actions were commenced, but they have been consolidated.

## BACKGROUND

Plaintiffs originally commenced this action in New York State Supreme Court by serving the defendants with a summons. Petition for Removal at ¶ 2 & Ex. A. Because the plaintiffs alleged violations of federal securities and racketeering laws, the defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. *Id.* at Paras. 1, 4.

Following removal, the plaintiffs filed an amended complaint including a demand for trial by jury. Laventhol then filed a third-party complaint that did not contain a jury request, naming two parties not including Tenzer, Greenblatt. Thereafter, the plaintiffs filed a second amended complaint, again including a jury demand. Both Laventhol and Finalco then submitted additional third-party complaints naming Tenzer, Greenblatt and others as third-party defendants. These pleadings did not request trial by jury, nor did the answers to them.

The plaintiffs include two corporate officers and five related corporations engaged in the business of selling pipe and related products. According to the second amended complaint, the plaintiffs began purchasing computer tax shelters from Finalco in 1976. They allege that they entered into these transactions on the recommendation of William Schneck, a member of the board of two of the plaintiff corporations and a Laventhol partner.

The computer tax shelters were leaseback transactions. The plaintiffs expected to profit both from tax advantages of the transactions and from the residual value that the computer equipment would have at the end of the lease term. However, by 1983 the plaintiffs came to realize that the computers had little residual value. As a consequence, not only did the plaintiffs fail to generate significant income from resale of the equipment, but the Internal Revenue Service challenged the deductions that the plaintiffs had taken on the ground that the transactions lacked economic substance.

In the second amended complaint, the plaintiffs charge that the defendants misrepresented or failed to disclose material facts relating to the residual value and tax risk of the transactions. This, according to the plaintiffs, constituted a violation of sections 12(2) and 17(a) of the Securities Act of 1933, 15 U.S.C. §§ 77*l* (2) and 77q(a); section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); and Rule 10b–5, 17 C.F.R. § 240.10b–5. The plaintiffs further allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, and state law.

In their respective third-party complaints, Laventhol and Finalco contend that Tenzer, Greenblatt, legal counsel to the plaintiffs, provided the advice upon which the plaintiffs relied in connection with the tax shelter transactions. Thus, according to Laventhol and Finalco, if they are found liable to the plaintiffs, then Tenzer, Greenblatt is in turn liable to them for contribution and indemnification. Laventhol Third–Party Complaint at ¶'s 85–104; Finalco Third–Party Complaint at ¶'s 76–95. Tenzer, Greenblatt alleges that the plaintiffs never looked to it for any tax or business advice about the transactions at issue here, but rather, as alleged in the complaint, relied on Laventhol and Finalco. *See* letter of James W.B. Benkard dated January 18, 1989, at 4–5.

During the course of trial preparation, counsel have from time to time alluded to the jury as the finder of fact. For example, in moving for summary judgment to dismiss Laventhol's claims, Tenzer, Greenblatt referred to the inferences that a jury might draw from the evidence. *See* Letter of Gerald Walpin dated February 6, 1989, Ex. 1. Similarly, counsel made general reference to a jury during oral argument and scheduling conferences. *See id.*, Ex. 2. Next, the draft pretrial order indicated that the case should be placed on the jury calendar and set a date for counsel to submit proposed *voir dire* questions. *See id.*, Ex. 3. Finally, Tenzer, Greenblatt submitted to the Court its proposed jury instructions regarding the third-party claims. *See id.*, Ex. 5.

Tenzer, Greenblatt now moves for an order establishing that Laventhol and Fi-

nalco waived their rights to a jury trial by failing to make a jury demand. These third-party plaintiffs respond that they should be entitled to have their claims against Tenzer, Greenblatt heard by a jury for three reasons. First, they argue that they properly relied upon the plaintiffs' general demand for a jury trial. Next, Laventhol and Finalco contend that the pre-trial order, consistent with the conduct of counsel, reflects the parties' consent to a jury trial on all issues. Finally, they assert that, even if no timely jury demand covers their claims against Tenzer, Greenblatt, the Court should exercise discretion pursuant to Rule 39(b) of the Federal Rules of Civil Procedure to grant a jury trial of all issues related to these third-party claims.

## DISCUSSION

### A. *Reliance on the Plaintiffs' Jury Demand*

Rule 38 of the Federal Rules of Civil Procedure, which governs jury demands, states in pertinent part:

> (b) Demand. Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other party a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue. Such demand may be indorsed upon a pleading of the party.

> \* \* \* \* \* \*

> (d) Waiver. The failure of a party to serve a demand as required by this Rule and to file it as required by Rule 5(d) constitutes a waiver by the party of trial by jury. A demand for trial by jury as herein provided may not be withdrawn without the consent of the parties.

F.R.Civ.P. 38(b), (d). Once the window for making a jury demand has closed, the "parties may then rely on the Rule's explicit terms in presuming that the fact-finder will not thereafter change for the claims raised in the complaint." *Berisford Capital Corp. v. Syncom Corp.*, 650 F.Supp. 999, 1001 (S.D.N.Y.1987). Here there is no dispute that the third-party plaintiffs did not themselves assert any timely jury demand.

Nevertheless, once a proper jury demand is made, all other parties to the action affected by the demand may rely on it with respect to the issues that it embraces. *See Rosen v. Dick*, 639 F.2d 82, 91–92 (2d Cir. 1980). But, "reliance is limited to 'all other parties in the action who are *affected* by the demand,' [5 *Moore's Federal Practice* ] ¶ 38.40, at 38–361 [ (2d ed. 1980) ] (emphasis supplied), and the demand itself is effective only as to 'all the issues that *concern* the demanding party ...' *id.* ¶ 38.40, at 38–361 (emphasis supplied)." *Id.* at 92.

Because *Rosen* is the case in which the Second Circuit most fully addresses these principles, some grasp of its facts is important to the determination here. The plaintiff in *Rosen*, a trustee in bankruptcy (the "Trustee"), initially sued several defendants, including Herman Meckler, for federal securities law violations. *Id.* at 85. When Meckler answered the original complaint, he asserted a general jury demand. *Id.* However, the Trustee subsequently filed a second amended complaint, adding defendants including Arthur Andersen & Co. ("Andersen"). Meckler and Andersen asserted cross-claims against each other, but apparently no jury demand was made either in the second amended complaint or in connection with the cross-claims. *Id.* at 85–86.

As the trial date approached, the Trustee moved for a separate bench trial of its claim against Andersen, arguing that Meckler's jury demand did not cover issues related to Andersen's liability. *Id.* at 86. The district court judge agreed, and on interlocutory appeal the Second Circuit held that "Andersen waived whatever jury trial rights it could have asserted in this case, except to the limited extent of the 'issues' embraced by Meckler's jury demand." *Id.* In reaching this conclusion, the court relied on an illustration provided by Professor Moore:

> "[I]f the demand does not pertain to certain issues, then one of the parties should make demand therefor. Thus assume that A sues X; X answers and also files a third-party complaint against Y. If A makes a timely general demand, the demand embraces all the issues between

A and X, and X may rely thereon and need not make a demand for those issues. It is rather strained, however, to. say that A's general demand embraces the third-party issues between X and Y, with which A is not concerned. And it would seem that either X or Y should make a timely demand as to the third-party issues if a jury trial is desired as to those issues. If we vary the facts and assume that A has made no demand, but that X makes a general demand at the time he serves both his answer on A and the third-party complaint on Y, then it should follow that X has demanded jury trial for the issues between him and A and between him and Y, and that both A and Y may rely thereon and need make no demand."

*Id.* at 92 (quoting Moore's, *supra*, ¶ 38.45 at 38–391 to 38–392 n. 2) (emphasis deleted).

The court went on to identify the issues as to which Andersen could benefit from the jury findings because they had been encompassed within Meckler's demand. These issues included the existence of the fraud, any knowledge by the bankrupt of the fraud (since this would affect reliance and causation relating to the potential liability of both Meckler and Andersen), the amount of damages suffered (since this would limit Andersen's ultimate liability), Meckler's liability, and the truth or falsity of financial reports allegedly relied on by the bankrupt. *Id.* at 99–100.

*In re N–500L Cases,* 691 F.2d 15 (1st Cir.1982), likewise deals extensively with the scope of reliance on a jury demand. That case concerned litigation by the victims of an air disaster against various defendants. The plaintiffs had all asserted jury demands. *Id.* at 18. Two defendants settled, reserving their rights to seek contribution from the non-settling defendants. *Id.* When they moved for a bench trial on their contribution claims, the non-settling defendants objected, arguing that they had relied on the plaintiffs' jury demands. *Id.* The district court held that the non-settling defendants had waived their right to a jury and, after a bench trial, assessed proportionate liability. *Id.* at 18–19.

On appeal, the First Circuit held that the non-settling defendants had been deprived of their right to a jury trial on certain issues, but that this error was harmless since the settling defendants would have been entitled to a directed verdict on those issues. *Id.* at 25, 32. Specifically, the court found that the plaintiffs' jury demands encompassed issues related to the tort liability of the non-settling defendants. *Id.* at 24. The demands did not, however, embrace issues concerning the proportionate liability of the defendants for purposes of contribution. *Id.* Accordingly, if the case had proceeded to trial, the liability of the defendants would have been tried to the jury, but the apportionment of damages among the defendants would have been determined by the trial judge. *Id.* at 25.

The reasoning in *Rosen* and *N–500L* provides substantial guidance. These cases establish that whether reliance upon another party's jury demand is effective depends upon whether issues have been raised beyond those encompassed by the demand. If so, there can be no reliance as to these additional issues. "[T]he term 'issue' means something more than the evidence offered and the legal theories pursued, although these are pertinent factors." *Rosen*, 639 F.2d at 94. Furthermore, an important consideration is whether the two issues turn on the same matrix of facts. *See In re N–500L Cases*, 691 F.2d at 23.

Here, Laventhol and Finalco argue that their claims against Tenzer, Greenblatt arise from the same facts as do the plaintiffs' claims against the defendants. For example, they contend that in rebutting the plaintiffs' claimed reliance on the defendants, they will show that, in fact, the plaintiffs relied primarily on Tenzer, Greenblatt for advice in connection with the computer transactions.

But the fact that the issues share some factual components is not sufficient for them to be deemed the "same issue" for purposes of a jury demand. A single set of facts often gives rise to related claims of liability and contribution, yet these claims

encompass different constellations of issues. In *Rosen*, for example, not all issues concerning the claims for contribution and indemnity between Meckler and Andersen were embraced by Meckler's demand for a jury trial of the plaintiff's claims against him. As the court there held, it is not sufficient merely to label various parties joint tortfeasors and then assert that all issues between them are subject to a general jury demand. *Rosen*, 639 F.2d at 99. Similarly, in *N–500L*, the plaintiffs' jury demand with respect to all defendants was an insufficient basis for assuming that a jury would determine the proportionate liability of each defendant. *In re N–500L Cases*, 691 F.2d at 24. Professor Moore's example, cited in *Rosen*, illustrates this point: a plaintiff's general jury demand does not embrace third-party issues with which the plaintiff is unconcerned. Here, the plaintiffs have no direct interest, for example, in which of the defendants might ultimately be held responsible for any damages that are assessed.

Moreover, reliance depends not only on whether the party that originally made the demand might now have some abstract concern with certain issues, but also on whether those issues were in the case when the demand was made. Thus, in *Rosen*, the defendant Meckler was

> surely "concerned" with the third-party issues which have arisen, but those issues were not part of the case at the time he demanded a jury trial, and he cannot rely on a demand made only to the plaintiff to cover the claims between himself and Andersen....

*Rosen v. Dick*, 639 F.2d at 92. Similarly, at the time the plaintiffs made their jury demand here, they asserted no claims against Tenzer, Greenblatt, nor do the answers of Laventhol or Finalco refer to that party. Since many of the issues later raised in the third-party complaints were not in the case when the jury demand was made, Laventhol and Finalco could not reasonably rely on the plaintiffs' jury demand here as applying to all issues encompassed in their third-party claims.

The third-party issues that are embraced by the jury demand in this case are fairly circumscribed. As in *Rosen*, the alleged fraud that underlies both the plaintiffs' claims and the third-party claims must be adjudicated by the jury. Similarly, the jury will determine the damages suffered by the plaintiffs, thus placing an outer limit on Tenzer, Greenblatt's potential liability. On issues such as these, then, the parties to the third-party action are entitled to benefit from the jury's findings. *See Rosen*, 639 F.2d at 100.

But, the basic issue of Tenzer, Greenblatt's liability for any damages suffered by the plaintiffs is not within the scope of the jury demand. In *N–500L*, the tort liability of the non-settling defendants was a jury issue because this precise issue had been the subject of the plaintiffs' jury demand with respect to all defendants. By contrast, in *Rosen*, no jury demand covered the claims of the Trustee against Andersen, and so the court omitted Andersen's liability from the list of jury issues. Here, the argument for excluding Tenzer, Greenblatt's potential liability from the issues covered by the jury demand is even stronger: not only is there no demand encompassing that issue, but the plaintiffs here have never asserted any claims against Tenzer, Greenblatt.

In summary, Laventhol and Finalco may rely on the plaintiffs' jury demand only to the extent that the jury determination of specific issues relating to claims between those parties and the plaintiffs will directly affect the third-party claims against Tenzer, Greenblatt.

**B.** *Consent to a Jury Trial*

Laventhol and Finalco nevertheless argue that Tenzer, Greenblatt, by its conduct, has "consented" to a jury trial and that it is now bound by the pretrial order. But the pretrial order has not yet been approved by the Court. Moreover, its references to a jury are ambiguous: in light of the plaintiffs' jury demand, placing the case on the "jury calendar" and establishing a deadline for proposed voir dire questions would be appropriate even if some

issues germane to the third-party claims were nevertheless to be tried to the Court.

Furthermore, even if the pretrial order were final and unambiguous, it would not be immutable. Modification of a pretrial order may be made where the parties would not be prejudiced and orderly procedural arrangements would not be unduly disrupted. *See McFadden v. Sanchez*, 710 F.2d 907, 911–12 (2d Cir.), *cert. denied*, 464 U.S. 961, 104 S.Ct. 394, 78 L.Ed.2d 337 (1983); *Laguna v. American Export Isbrandtsen Lines, Inc.*, 439 F.2d 97, 101 (2d Cir.1971). Here, the interests of justice would be served by amending the pretrial order to reflect the substantive rights of the parties with respect to trial by jury or by the court, and any minor prejudice could be alleviated by providing the parties time to adapt their preparation to a partial bench trial.

Finally, Laventhol and Finalco contend that Tenzer, Greenblatt is estopped by virtue of its own conduct from arguing that a jury trial of the third-party issues has been waived. Certainly, the actions of Tenzer, Greenblatt's counsel—including the submission of proposed jury instructions—implied the understanding that the claims against it would be tried to a jury. Then, by happy accident, these attorneys evidently realized that a timely jury demand encompassing these issues might not, in fact, have been made.

There are occasions when claims normally tried only to the court may be tried to a jury upon consent of the parties. *See* F.R. Civ.P. 39(c) (where statute provides for trial without jury, parties may nevertheless consent to jury trial). There may even be times when the conduct of a party so clearly manifests its knowing consent to a jury trial that no formal stipulation need have been executed. *See Stockton v. Altman*, 432 F.2d 946, 949–50 (5th Cir.1970), *cert. denied*, 401 U.S. 994, 91 S.Ct. 1232, 28 L.Ed.2d 532 (1971) (case listed as jury trial on docket and pretrial order, parties agreed at pretrial hearing to submit issues to jury; defendant made no objection to jury until verdict rendered). But in all except the most extreme case, the subjective understanding of counsel and their consequent conduct do not affect the objective determination of whether jury rights have been preserved. *See Rosen*, 639 F.2d at 100 (technical requirements of jury demand must be met to avoid "slippery factual inquiries"). In short, misconception is not consent.

Thus, in *Higgins v. Boeing Co.*, 526 F.2d 1004, 1007 (2d Cir.1975), neither the fact that the parties had proceeded for three years on the assumption that the case would be tried to a jury nor the "long-time acquiescence" of the party opposing a jury trial led the court to find that any absolute right to a jury had been revived. Rather, these were treated as factors relevant only to a discretionary determination whether to grant an untimely jury request under Rule 39(b) of the Federal Rules of Civil Procedure. *Id.* The same analysis is appropriate here.

## C. *Discretionary Relief from a Jury Waiver*

■ Rule 39(b) provides as follows:

Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by jury of any or all issues.

F.R.Civ.P. 39(b). Notwithstanding the broad language of the rule, the case law substantially limits the court's discretion to grant a tardy request for a jury trial. To determine where the instant case falls in relation to these limits, it is necessary to review the treatment of Rule 39(b) in this circuit.

In *Noonan v. Cunard Steamship Co.*, 375 F.2d 69 (2d Cir.1967), the Second Circuit rejected the attempts of a plaintiff in a tort case to be relieved of the consequences of the inadvertent failure to make a timely jury demand. It held that the effect of prior case law was to "narrow the allowable scope of discretion; the area open to the judge's discretion has shrunk to determining whether the moving party's· show-

ing *beyond* mere inadvertence is sufficient to justify relief." *Id.* at 70 (emphasis in original; citation omitted).

The Second Circuit discerned more than inadvertence in *Higgins v. Boeing Co.*, 526 F.2d 1004 (2d Cir.1975). There the parties had removed the action from New York state courts without any jury demand having been made, and none was timely made in the district court. Nevertheless, since New York law was incorporated by reference under Rule 81(c) of the Federal Rules of Civil Procedure and would have permitted the discretionary approval of a tardy jury request, the court held that such discretion should have been exercised. *Id.* at 1007. Moreover, the court identified a number of factors favoring the granting of the jury demand there: (1) the action was a type traditionally triable by a jury; (2) the parties had long proceeded on the assumption that it was a jury trial; and (3) the defendants would not be prejudiced. *Id.*

In *Cascone v. Ortho Pharmaceutical Corp.*, 702 F.2d 389 (2d Cir.1983), the Second Circuit again confronted the problem of relief from a jury waiver. Like *Higgins,* the *Cascone* case had been removed from the New York courts, but in this case removal had occurred prior to the filing of all pleadings and so did not fall into any of the specific categories outlined in Rule 81(c). *Id.* at 391. Nonetheless, the court held that the district court had properly exercised its discretion in granting a jury trial, since "the matter at hand falls within *Higgins'* ambit rather than *Noonan's.*" *Id.* at 393. The court found that there is some "play in the joints" in the procedural requirements for making a jury demand in a removed case, and it further found that the additional factors identified in *Higgins* as favoring a jury trial were present. *Id.* at 392.

The district court reached a similar result in *Landau v. National Railroad Passenger Corp.*, 97 F.R.D. 723 (S.D.N.Y.1983). As in *Cascone, Landau* involved a case removed from state court prior to the filing of an answer. *Id.* at 724. The court found that *Cascone* permitted the exercise of discretion and that the *Higgins* factors fa-

vored a jury trial. *Id.* at 724–25. In addition, the court noted that "behind all of the procedural rules and regulations lurks a hapless client who bears no personal responsibility for this dilemma." *Id.* at 725.

The seeming expansion of a district court's discretion to grant an untimely jury demand came to an abrupt halt in *Washington v. New York City Board of Estimate*, 709 F.2d 792 (2d Cir.), *cert. denied,* 464 U.S. 1013, 104 S.Ct. 537, 78 L.Ed.2d 717 (1983). There the Second Circuit held that the requirements of Rule 38 governing jury demands apply with the same force to a pro se litigant as they do to counsel, even if the unrepresented plaintiff has received no actual notice of the deadline for making a jury request. *Id.* at 797–98. Furthermore, the court held that the district court did not abuse its discretion in refusing to permit an untimely jury demand, noting that the plaintiff first evinced an interest in a jury trial only when an attorney had appeared to represent him. *Id.* at 798–99.

Certain general conclusions can be drawn from this review of the case law. First, the rule announced in *Noonan* that more than mere inadvertence must be shown before a tardy jury demand may be granted is still good law in this circuit, though this narrow view has been subject to criticism. *Compare id.* at 798 *and Cascone v. Ortho Pharmaceutical Co.*, 702 F.2d at 393 *with Lewis v. Thigpen,* 767 F.2d 252, 258 n. 10 (5th Cir.1985) (granting request of pro se litigant to make untimely jury demand) *and* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2334 at 113–16 (1971) (court should approach Rule 39(b) application with open mind, not fixed policy). On the other hand, the *Noonan* rule limits but does not eliminate discretion, as illustrated by cases removed from state court. *See Cascone v. Ortho Pharmaceutical Co.*, 702 F.2d at 392. If the initial hurdle created by *Noonan* is overcome, a court must still weigh a number of factors in exercising its discretion. *See id.; Higgins v. Boeing Co.*, 526 F.2d at 1007.

Although this is a case removed from the New York courts, this fact alone is insufficient to rescue it from grasp of the *Noo-*

*nan* rule. The exception for removed cases is based on the fact that New York civil practice falls in a "gray area" not directly addressed by the Federal Rules, *see id.,* and on the desire to "accommodat[e] a removed party who may not be as at ease in the new surroundings imposed upon him." *Cascone v. Ortho Pharmaceutical Corp.,* 702 F.2d at 392. But here the defendants who now seek a jury trial are the parties that effected removal, and there has been no allegation that the failure to make a timely demand was based on any confusion between state and federal procedural requirements. *See South African Airways v. Tawil,* 658 F.Supp. 889, 891–92 (S.D.N.Y.1987).

Thus, it must be determined whether, for other reasons, the circumstances here go beyond mere inadvertence. "Inadvertence" characterizes a wide spectrum of behavior. Virtually every decision in this circuit where courts have found that they may not exercise discretion under Rule 39(b) involves a straightforward bilateral case in which both parties failed to make a jury demand. *See, e.g., Cascone v. Ortho Pharmaceutical Corp.,* 702 F.2d 389, 390 (personal injury action); *Washington v. New York City Board of Estimate,* 709 F.2d at 793 (employment discrimination); *Noonan v. Cunard Steamship Co.,* 375 F.2d at 69–70 (personal injury action); *Alvarado v. Santana–Lopez,* 101 F.R.D. 367 (S.D.N.Y.1984) (constitutional tort); *Ingredient Technology Corp. v. Nay,* 532 F.Supp. 627, 633 (E.D.N.Y.1982) (breach of covenant not to compete). In addition, courts have frequently rejected late jury demands that seem to be based merely on a change in litigation strategy. *See, e.g., Washington v. New York City Board of Estimate,* 709 F.2d at 798 (jury demand only made when attorney entered case); *Alvarado v. Santana–Lopez,* 101 F.R.D. at 368 (change in strategy suggested by information obtained in discovery); *Reefer Express Lines (Bermuda) Pty., Ltd. v. Arkwright–Boston Manufacturers Ins. Co.,* 87 F.R.D. 133, 135 (S.D.N.Y.1980) ("belated change of strategy").

But this is not a case of such simple inadvertence: it is rather an instance of excusable erroneous reliance. Here a jury demand had been made in a complicated multi-party action, and the defendants Laventhol and Finalco relied on it in good faith, albeit in error. Professor Moore recognized that relief from a jury waiver is "appropriate in cases involving multiple parties." Moore's, *supra,* ¶ 39.09 at 39–30 (1988). Similarly, in *State Mutual Life Ins. Co. v. Arthur Andersen & Co.,* 581 F.2d 1045 (2d Cir.1978), the Second Circuit observed that the addition of third-party claims

> radically altered the situation before the district court. Interests of fairness, judicial economy, and consistency in results dictated that, to the extent permitted by the Federal Rules, identical or mutually dependent issues be resolved by one factfinder, whether it be jury or judge, rather than by two or more separate bodies.

*Id.* at 1050. Accordingly, the court endorsed the district court's original decision to relieve one party of its jury waiver, and it forbade a retrial to the court of the claims upon which the first jury had been unable to agree. *Id.* at 1050–51. Here, although the issues raised in the third-party complaints are not "identical" to those in the main action for the reasons indicated above, they are surely "mutually dependent." Finally, in contrast to *Washington v. New York City Board of Estimate,* where the court declined to grant relief from a jury waiver in part because the plaintiff had never believed that an effective jury demand had been made, 709 F.2d at 798–99, Laventhol and Finalco actually relied here upon the plaintiffs' jury demand.

Because it is appropriate to exercise discretion in this case, the factors identified in *Higgins* as informing that discretion must be analyzed. First, it is evident that issues relating to contribution are traditionally tried to a jury in an action where liability is a jury issue. *See In re N–500L Cases,* 691 F.2d at 21; 6 C. Wright & A. Miller, *supra,* § 1448 at 264 ("[T]he question whether someone is a joint tortfeasor is largely one of fact to be determined by the jury....").

Second, all of the parties have relied throughout the long history of this action on the expectation that all issues would be tried to the jury. *See Higgins v. Boeing Co.*, 526 F.2d at 1007 (parties proceeded for three years on such assumption); *Landau v. National Railroad Passenger Corp.*, 97 F.R.D. at 724–25 (assumption of jury warrants relief from waiver). This is apparent from the allusions to a jury trial in the draft pretrial order, in prior motion papers, and in pretrial conferences. Not until the most recent pretrial conference had any party suggested that some issues might be tried to the court.

Third, Tenzer, Greenblatt will suffer no prejudice if the jury decides all issues; it will be deprived only of the "windfall" benefit it might have received from the erroneous reliance by Laventhol and Finalco on the plaintiffs' demand. *See id.* at 725. Tenzer, Greenblatt has been preparing for a jury trial as demonstrated by its submission of proposed jury instructions, and so would not be forced to change its strategy or expend additional resources if relief from the jury waiver is granted. *See Higgins v. Boeing, Co.*, 526 F.2d at 1007 (no prejudice where "long-time acquiescence" by defendants in anticipated jury trial).

The exercise of discretion is appropriate here, then, and each of the *Higgins* factors favors a jury trial on all issues. Accordingly, the motions of Laventhol and Finalco to be relieved of their jury waivers pursuant to Rule 39(b) of the Federal Rules of Civil Procedure are granted.

CONCLUSION

For the reasons set forth above, Laventhol and Finalco did not properly rely on the plaintiffs' jury demand, and they therefore waived their right to a jury on certain issues relating to their third-party claims against Tenzer, Greenblatt. This conclusion is not altered by the parties' mistaken anticipation of a jury trial or reference to a jury in the draft pretrial order. However, the erroneous reliance on the plaintiffs' demand was excusable in this case, and Laventhol and Finalco are relieved of their jury waivers pursuant to Rule 39(b).

SO ORDERED.