29 F.3d 88
 31 Collier Bankr.Cas.2d 1090, 25 Bankr.Ct.Dec. 1440,
Bankr. L. Rep. P 75,986
 In re The LIONEL CORPORATION and Lionel Leisure, Inc., Debtors.
Murray KLEIN, Stanley Zabar, and Saul Zabar, as Tenants in
Common, Plaintiffs-Appellees,
v.
CIVALE & TROVATO, INC., Defendant-Appellant,
Lionel Leisure, Inc., Defendant-Appellee,
J. United Electrical Contracting Corp., Defendant.
 No. 1235, Docket 93-5085.
 United States Court of Appeals,
Second Circuit.
 Argued March 7, 1994.
Decided July 12, 1994.
 
 John S. Wojak, Jr., Ross & Cohen, New York City, for defendant-appellant.
 Paul H. Aloe, New York City (Craig Weiner, Lawrence Devine, Rubin Baum Levin Constant & Friedman, of counsel), for plaintiffs-appellees.
 Kevin Toole, New York City (Jonathan Drucker, Angel & Frankel, P.C., of counsel), for defendant-appellee.
 Before: WALKER and JACOBS, Circuit Judges, and CARMAN, Judge.*
 WALKER, Circuit Judge:
 
 
 1
 Civale & Trovato, Inc. ("CTI") is a construction company that performed work for Lionel Leisure, Inc. ("Lionel") on a large retail space in New York City that Lionel leased from Messrs. Murray Klein, Stanley Zabar, and Saul Zabar (the "Owners"). CTI filed a mechanic's lien against the premises one week before Lionel filed a petition for Chapter 11 bankruptcy. CTI now appeals from a judgment of the United States District Court for the Southern District of New York (John F. Keenan, Judge ) affirming the order of the United States Bankruptcy Court for the Southern District of New York (Burton R. Lifland, Bankruptcy Judge ) which held that CTI's attempts to perfect its lien after the bankruptcy petition was filed violated the Bankruptcy Code's automatic stay provision and that the filing of the lien constituted an impermissible preferential transfer. We reverse.
 
 BACKGROUND
 
 2
 Between May and October of 1990, CTI performed construction work for Lionel on a large retail space that Lionel leased from the Owners to operate a toy store. CTI claims that Lionel owes it approximately $168,000 for labor and materials expended on the job. On June 7, 1991, CTI filed a Notice of Mechanic's Lien (the "Notice") against the premises in order to secure its claim. This filing complied with the time constraints specified in Sec. 10 of New York Lien Law, which provides in relevant part that:
 
 
 3
 Notice of lien may be filed at any time during the progress of the work and the furnishing of the materials, or, within eight months after the completion of the contract, or the final performance of the work, or the final furnishing of the materials, dating from the last item of work performed or materials furnished....
 
 
 4
 N.Y.Lien Law Sec. 10(1).
 
 
 5
 Section 11 of New York Lien Law required CTI to follow this filing by serving a copy of the Notice on the owner within thirty days and by filing proof of such service with the county clerk within thirty-five days. See N.Y.Lien Law Sec. 11. Accordingly, CTI served a copy of the Notice on Lionel on June 10, 1991. Four days later, on June 14th, Lionel filed a petition for relief and reorganization pursuant to Chapter 11 of the Bankruptcy Code. On July 5, 1991, CTI served a copy of the Notice on the Owners. On July 11, 1991, CTI filed an affidavit of proof of service with the Clerk of the County of New York.
 
 
 6
 On October 1, 1991, the Owners and Lionel commenced an action in the bankruptcy court that sought, among other things, an order declaring CTI's mechanic's lien invalid. On cross-motions for summary judgment, the bankruptcy court determined that CTI's post-petition service of notice and filing of proof of service were acts to enforce a lien against property of the debtor's estate and thus violated the automatic stay imposed by Sec. 362 of the Bankruptcy Code. See 11 U.S.C. Sec. 362(a)(4) and (6). The bankruptcy court ruled that because these acts could not be given effect due to the automatic stay, CTI's lien had expired. In addition, the bankruptcy court stated that the Bankruptcy Code's preferential transfer provisions, 11 U.S.C. Sec. 547, "seem to form an insurmountable hurdle for the putative lien creditors blocking the sustenance of vitality of their lien." The bankruptcy court therefore ordered that CTI's lien be "vacated, with prejudice, extinguished and without any further force and effect." Its order directed the Clerk of the County of New York "to take all necessary steps to have ... the [CTI] Notice removed from all records maintained by said Clerk for the recording of mechanics liens."
 
 
 7
 CTI appealed to the district court. The district court affirmed the bankruptcy court's determination that the service of the notice and filing of proof of service were invalid because they occurred after the automatic stay arose, 159 B.R. 410. In addition, the district court rejected CTI's argument that its lien is exempt from the bankruptcy trustee's avoidance powers because it qualifies as a "statutory lien" under Sec. 547(c)(6). The district court reasoned that because CTI did not file in time to obtain the benefit of the relation-back provision contained in Sec. 13(5) of the New York Lien Law, which permits a mechanic's lien filed within four months after completion of an improvement to "relate-back" and gain priority over any interest created after commencement of the improvement but before the filing of lien, CTI's filing fell within the ninety-day preference period prior to the filing of Lionel's bankruptcy petition. CTI appealed to this court.
 
 DISCUSSION
 
 8
 I. Is This Case Moot?
 
 
 9
 As an initial matter, appellees argue that this case is moot because CTI did not obtain a stay of the bankruptcy court's decision and the New York County Clerk discharged CTI's notice of lien from its records in accordance with the court's order. Appellees reason that once a lien lapses in the State of New York, it cannot be judicially resurrected. However, each of the cases cited by appellees for this proposition pertains to a situation where the lien expired because of the lienor's failure to comply with the Lien Law's statutory requirements for preserving or continuing the lien. See In re LoPriore, 115 B.R. 462 (Bankr.S.D.N.Y.1990); Dittmar Explosives, Inc. v. A.E. Ottaviano, Inc., 20 N.Y.2d 498, 285 N.Y.S.2d 55, 231 N.E.2d 756 (N.Y.1967); Paolangeli v. Sopp, 145 Misc.2d 259, 546 N.Y.S.2d 322 (N.Y.Sup.Ct.1989); Hanson Heating & Plumbing, Inc. v. Stout, 88 Misc.2d 241, 388 N.Y.S.2d 558 (N.Y.Sup.Ct.1976); American Bridge Co. v. T.A. Larsen Co., 204 Misc. 131, 116 N.Y.S.2d 700 (N.Y.Sup.Ct.1952); Bretzfelder v. Froman, 76 Misc.2d 1063, 352 N.Y.S.2d 549 (Westchester County Ct.1973). These cases hold only that where a lien has lapsed by operation of law, it cannot be revived by a lienor's tardy attempt to comply with statutory requirements for maintaining or continuing the lien.
 
 
 10
 We are persuaded by CTI's argument that a lien that has been vacated because a court erroneously determined that the lienor had not complied with the Lien Law may be reinstated upon reversal of that vacatur, regardless of whether the lienor obtained a stay. For support, CTI cites to five New York cases where a lower court has vacated a mechanic's lien, only to have that decision reversed and the lien reinstated by an appellate court. See Fane v. Armani Plumbing & Mechanical, Inc., 168 A.D.2d 143, 571 N.Y.S.2d 133 (1991); Dember Constr. Corp. v. P & R Elec. Corp., 76 A.D.2d 540, 431 N.Y.S.2d 586 (1980); Brusca v. Maschino, 61 A.D.2d 973, 402 N.Y.S.2d 452 (1978); Nimke v. Inta-State, Inc., 34 A.D.2d 675, 310 N.Y.S.2d 462 (1970); Kim Kevin Corp. v. A. & A. Gibel Co., 20 A.D.2d 807, 248 N.Y.S.2d 741 (1964). In four of the cases the lower court had ordered the lien discharged or cancelled from the county clerk records and there is no indication in any of them that a stay of the vacatur was obtained.
 
 
 11
 Appellees argue that reinstating CTI's lien will prejudice creditors who created an interest in the premises subsequent to the vacatur. However, apart from the fact that we have been informed that there have been no conveyances, mortgages, or other interests in the premises recorded subsequent to the vacatur of CTI's lien on October 30, 1992, the records of the New York County Clerk clearly reflect that CTI's lien was vacated by order of the United States Bankruptcy Court. As such, any intervening creditor would have been on notice that a lien in favor of CTI once existed and had been judicially discharged and thus that his own interest was subject to the risk that the court order discharging the lien might be reversed on appeal. Because we think that appellate courts may reinstate liens that have been wrongly terminated by lower courts even where intervening creditors have acquired an interest in the subject property, we reject appellees' mootness argument.
 
 II. The Applicability of the Automatic Stay
 
 12
 Before turning to the merits, we address CTI's argument that its lien should not be subject to the automatic stay provision of the Bankruptcy Code because the stay only protects property of the debtor, Lionel, and its lien was filed against property of the Owners. Appellees respond that CTI waived this argument by not presenting it to either the bankruptcy court or the district court. Although we retain discretion to decide questions not raised initially in the court below, the general rule is that " 'a federal appellate court does not consider an issue not passed upon below.' " Austin v. Healey, 5 F.3d 598, 601 (2d Cir.1993) (quoting Singleton v. Wulff, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976)).
 
 
 13
 CTI contends that we should hear its argument regarding the non-applicability of the automatic stay because failure to consider its claim "will result in a possible miscarriage of justice," Radix Org., Inc. v. Mack Trucks, Inc., 602 F.2d 45, 48 (2d Cir.1979); see also Republic Nat'l Bank v. Eastern Airlines, Inc., 815 F.2d 232, 240 (2d Cir.1987), and, alternatively, that its argument cannot be waived because it calls into question the bankruptcy court's subject matter jurisdiction, see John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc., 588 F.2d 24, 27 (2d Cir.1978), cert. denied, 440 U.S. 960, 99 S.Ct. 1502, 59 L.Ed.2d 773 (1979); Fed.R.Civ.P. 12(h)(3). We reject both contentions.
 
 
 14
 Failure to consider CTI's argument will not lead to a manifest injustice because it is not the only means by which CTI can achieve success. CTI can still prevail by showing that it did not violate the automatic stay and that its lien does not constitute a preferential transfer. CTI cannot excuse its failure to use a potential weapon in its arsenal simply by asking for a second chance to wage its battle. A contrary rule would unfairly prejudice its adversaries and contravene the purpose of having circuit courts sit as a forum of appellate review. See Anschutz Land & Livestock Co. v. Union Pac. R.R. Co., 820 F.2d 338, 344 n. 5 (10th Cir.), cert. denied, 484 U.S. 954, 108 S.Ct. 347, 98 L.Ed.2d 373 (1987). This is especially true here where appellees have raised a substantial response to CTI's argument, namely that the automatic stay does apply because CTI impermissibly attempted to recover a claim against Lionel and/or to obtain Lionel's property, in violation of Sec. 362(a)(1) and (3).
 
 
 15
 CTI's argument also does not call into question the bankruptcy court's jurisdiction, which was clearly established under 28 U.S.C. Secs. 157 and 1334 and 11 U.S.C. Sec. 105(a). The Owners' suit against Lionel sought to enforce Lionel's obligation under the lease to cause any mechanic's lien filed against the premises to be discharged by payment, deposit, bond, order of court, or otherwise. As such, it was a core proceeding which the bankruptcy court was authorized to hear and determine under 28 U.S.C. Sec. 157(b)(2)(G). The bankruptcy court had jurisdiction over the Owners' claims against CTI under principles of supplemental jurisdiction. See 28 U.S.C. Sec. 1367.
 
 
 16
 For the foregoing reasons, we decline to address the merits of CTI's argument regarding the non-applicability of the automatic stay for the first time on appeal. See Truck Drivers Local 807 v. Carey Transp. Inc., 816 F.2d 82, 90 (2d Cir.1987) (refusing to consider argument in a bankruptcy appeal not raised in courts below); see also In re Marvin Properties, Inc., 854 F.2d 1183, 1187 (9th Cir.1988) (same); In re Modern Boats, Inc., 775 F.2d 619, 621 (5th Cir.1985) (per curiam) (same).
 
 
 17
 III. Did CTI Violate the Automatic Stay?
 
 
 18
 We now turn to the merits of whether CTI violated the automatic stay by serving notice upon the Owners and filing proof of such service after Lionel filed for bankruptcy. Because our review of the district court's decision is plenary, we independently examine the bankruptcy court's decision, applying the clearly erroneous standard to findings of fact and de novo review to conclusions of law. See In re Brody, 3 F.3d 35, 38 (2d Cir.1993); In re G.S.F. Corp., 938 F.2d 1467, 1474 (1st Cir.1991) (collecting cases).
 
 
 19
 The bankruptcy court held that CTI's post-petition actions were acts to enforce its lien in violation of the automatic stay that protected Lionel's property. Section 362(a)(4) of the Bankruptcy Code specifically applies the stay to "any act to create, perfect, or enforce any lien against property of the estate." CTI argues that its post-petition activity fits within the automatic stay exception found in Secs. 362(b)(3) and 546(b). Section 362(b)(3) provides that "the filing of a petition ... does not operate as a stay ... of any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under Section 546(b) of this title." Section 546(b) provides that "[t]he rights and powers of a trustee under sections 544, 545 [avoidance of pre-petition statutory liens] and 549 [avoidance of post-petition transactions] of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection." The more narrow question thus becomes whether the New York Lien Law would permit CTI to perfect its lien by serving notice of the lien and filing proof of service where another entity had acquired rights to the property after CTI had filed its notice of lien.
 
 
 20
 Appellees claim that CTI cannot take advantage of this exception absent a specific provision of law permitting the perfection to "relate-back" to an earlier time. Appellees argue that because CTI filed too late to take advantage of New York Lien Law's relation-back provision, CTI cannot be saved by Sec. 546(b). This analysis was adopted by both the bankruptcy court and the district court. We take a different view.
 
 
 21
 We see nothing in Sec. 546(b) indicating that it applies only when the lienor fits within a "relation-back" statute. As long as an "applicable law" authorizes perfection after another party has acquired interests in the property, a lienor fits within the exception. We think that the New York Lien Law provides such authorization. While we recognize that no provision of the New York Lien Law specifically states that a superior lienor may serve its notice and file its proof of claim after another party has acquired its interest, the right to do so is reasonably inferred from Secs. 3, 11, and 13(1).
 
 
 22
 Section 3 of the Lien Law provides that a mechanic's lien arises "from the time of filing a notice of such lien." Section 13(1) provides that a mechanic's lien "shall have priority over a conveyance ... not recorded, docketed or filed at the time of the filing of the notice of such lien." Under these two provisions, CTI's lien was created at the time it filed its notice of lien and, as of that date, took priority over any subsequently filed interest. CTI achieved this superior status even before it complied with Sec. 11's requirement that it serve its notice of lien and file proof of such service. We know this because Sec. 11 explicitly states that failure to follow its requirements "shall terminate the notice as a lien." If non-compliance with Sec. 11 terminates the lien, then the lien must exist prior to such non-compliance. In other words, while complying with Sec. 11 is necessary to keep a lien alive, it is not a prerequisite to establishing the lien's initial validity, and hence, priority.
 
 
 23
 It is thus apparent that CTI's lien would have been superior to an interest in the premises acquired by a creditor after CTI filed its notice of lien but before it complied with Sec. 11. Similarly, CTI's lien was prior to and therefore superior to the subsequently created interest of a hypothetical bankruptcy trustee. Because of this superiority, CTI was permitted to perfect its lien by complying with Sec. 11, even after Lionel filed its bankruptcy petition. We therefore conclude that CTI's post-petition conduct fits within the exception created by Secs. 362(b)(3) and 546(b) and should not have been declared invalid by the bankruptcy court as a violation of the automatic stay.
 
 
 24
 IV. Is CTI's Lien Voidable as a Preferential Transfer?
 
 
 25
 The final issue is whether CTI's lien constitutes an impermissible preferential transfer. The Bankruptcy Code gives trustees in bankruptcy the authority to avoid any preferential transfer to a creditor of an interest of the debtor made during the ninety days prior to the petition date. See 11 U.S.C. Sec. 547(b). CTI claims that this avoidance scheme does not apply to its lien because of Sec. 547(c)(6) of the Bankruptcy Code, which provides that "[t]he trustee may not avoid under this section a transfer ... that is the fixing of a statutory lien that is not avoidable under section 545 of this title." Although Sec. 545 enumerates various conditions under which the trustee may avoid the fixing of a statutory lien, appellees do not assert that any of them are applicable.
 
 
 26
 Instead, appellees vigorously argue that CTI's filing of a notice of lien does not qualify as "the fixing of a statutory lien." The Bankruptcy Code defines a statutory lien as a
 
 
 27
 lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute.
 
 
 28
 11 U.S.C. Sec. 101(53). In contrast, the Code defines a security interest as a "lien created by an agreement," 11 U.S.C. Sec. 101(51), and a judicial lien as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding," 11 U.S.C. Sec. 101(36). The Code thus contemplates that liens created consensually (such as mortgage liens or UCC security interests) or by judicial action (such as judgment liens, attachments, equitable liens or levies) are not "statutory liens," while liens that come into being as a result of statutory operation, without consent or judicial action, are "statutory liens." Given this scheme, we believe that mechanic's liens qualify as statutory liens. The legislative history to Sec. 101(53) confirms this conclusion. It states that a statutory lien is "one that arises automatically, and is not based on an agreement to give a lien or on judicial action. Mechanics', materialmen's, and warehousemen's liens are examples." H.R.Rep. No. 595, 95th Cong., 1st Sess. 314 (1978); S.Rep. No. 989, 95th Cong., 2d Sess. 27 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5813, 6271.
 
 
 29
 Our decision is in accord with other courts that have addressed this issue. In In re Severson Acres Development Corp., 142 B.R. 59 (Bankr.N.D.N.Y.1992), the court rejected a trustee's argument that a post-petition filing of a mechanic's lien in accordance with New York Lien Law constituted a preferential transfer:
 
 
 30
 Section 547(c)(6) provides ... that a trustee may not avoid the fixing of a statutory lien that is not avoidable under section 545. Mechanics' liens duly filed pursuant to state law are not avoidable under section 545. Consequently, this court disagrees with the trustee's position.
 
 
 31
 Id. at 60. Although the lien in that case received the benefit of New York's "relation-back" provision, the court's preference decision did not rely on that fact. The court looked instead to whether the lienor had filed his notice of lien within the statutory time period. See also In re Wisner, 77 B.R. 395, 397-98 (Bankr.N.D.N.Y.1987) (holding that mechanic's lien arising under New York Lien Law is "statutory lien" as opposed to "judicial lien").
 
 
 32
 In In re APC Construction, Inc., 132 B.R. 690 (D.Vt.1991), the lienor filed his notice of lien under Vermont's lien law within the ninety-day period prior to the debtor's filing of bankruptcy. The district court determined that the lien was a statutory lien because it took effect when the notice of lien was filed and thus existed independently of any judicial process. Id. at 694. The district court found insignificant that the lienor was required by law to obtain a judicial writ of attachment within three months after filing his lien because this step was required only to keep the lien in effect. The court reasoned that
 
 
 33
 the Bankruptcy Code categorizes a lien by the way it is established, not by how it is preserved. A statutory lien is a lien "arising" because of "specified circumstances or conditions" laid out in the statute.
 
 
 34
 Id. (quoting 11 U.S.C. Sec. 101(47) (1986), now found at Sec. 101(53)).
 
 
 35
 Several other courts have also observed that mechanic's liens are statutory liens because they arise strictly by operation of statute and not by agreement between the parties or judicial action. See, e.g., In re WWG Indus., Inc., 772 F.2d 810, 812 (11th Cir.1985); In re Minton Group, Inc., 28 B.R. 789, 791 (Bankr.S.D.N.Y.1983); In re Seel, 22 B.R. 692, 695-96 (Bankr.D.Kan.1982); In re Ribeiro, 7 B.R. 359, 361 (Bankr.D.Mass.1980); In re Saberman, 3 B.R. 316, 318 (Bankr.N.D.Ill.1980).
 
 
 36
 We reject appellees' argument that a mechanic's lien qualifies as a statutory lien only when the lienor files within a "relation-back" period. Appellees reason that the retroactive dating will usually mean that the lien becomes effective as of a date before the preference period. However, this would not be true in every case. For example, where the lienor's work was completed in the ninety days prior to bankruptcy, the lien would not have an effective date prior to the preference period. Thus, relating back to a time before the preference period cannot be dispositive of whether a lien qualifies as a statutory lien. Accord Minton Group, 28 B.R. at 791 ("If the defendant is correct in its assertion that the attachments are statutory liens, it would be of no significance whether the efficacy of the liens related back to a point beyond the 90-day period prior to the filing of the bankruptcy petition or commenced from some point within the 90-day period.").
 
 
 37
 Appellees also argue that filing within a relation-back period is necessary because it is only under these circumstances that the lien is fixed by force of statute rather than by the physical filing of a notice. However, this argument improperly shifts the focus of our inquiry from the nature of the lien in question (statutory or non-statutory) to how the lien's effective date is established. Appellees appear to have confused "the fixing of a statutory lien" with the statutory fixing of a lien. Since appellees have cited no authority for the proposition that a mechanic's lien can only be a statutory lien when its effective date is established by a relation-back provision, we reject their view as having no basis in the language or legislative history of Sec. 547(c)(6).
 
 
 38
 Accordingly, we conclude that CTI's pre-petition filing of its notice of lien qualifies as "the fixing of a statutory lien" under Sec. 547(c)(6) and cannot be avoided as a preferential transfer.
 
 CONCLUSION
 
 39
 For the foregoing reasons, we reverse the judgment of the district court and remand for further proceedings in the bankruptcy court.
 
 
 
 *
 Honorable Gregory W. Carman, Judge of the United States Court of International Trade, sitting by designation