**BOND STREET ASSOCIATES, LTD., Plaintiff,**

v.

**AMES DEPARTMENT STORES, INC., Zayre Central Corp., Defendants.**

**The United States Life Insurance Company in the City of New York, Additional Defendant on Counterclaim for Interpleader.**

No. 94 Civ. 4394 (LMM).

United States District Court, S.D. of New York.

Oct. 24, 1994.

Samuel Kirschenbaum, Kirschenbaum & Kirschenbaum, P.C., Garden City, NY, for plaintiff.

Luc A. Despins, Skadden, Arps, Slate, Meagher & Flom, New York City, for defendants.

### MEMORANDUM AND ORDER

McKENNA, District Judge.

Plaintiff, Bond Street Associates, Ltd. ("Bond Street"), appeals from the Bankruptcy Court for the Southern District of New York. On August 4, 1994, Bond Street filed a notice of motion requesting the Court to remand this case to the Supreme Court of New York, County of Nassau. For the reasons stated below, Bond Street's motion is denied.

### I.

#### A.

The complex nature of this motion requires that the substantive facts and the procedural history be dealt with separately. First, the

substantive facts. On April 8, 1985, Bella Vista Investments, Inc., MAXXAM Properties, Inc., and Conthru, Inc., the predecessors in interest to Bond Street, entered into a lease agreement ("the Lease") with the TJX Companies, Inc. ("TJX") as lessee.[1] (Am. Compl. ¶ 4.)

On October 25, 1988, TJX assigned its interest under the Lease to Zayre Central Corp. ("Zayre Central"), a wholly owned subsidiary of TJX. On October 28, 1988, Ames Department Stores, Inc. ("Ames") purchased the Zayre Stores Division of TJX ("Zayre Stores"), including the stock of Zayre Central. Ames agreed to assume all liabilities of Zayre Stores and to indemnify TJX for any losses arising out of the Lease. On April 29, 1989, Bond Street took title to the leased property. (Am.Compl. ¶¶ 5, 6.)

Therefore, as of April 29, 1989, the situation was this: Bond Street was the lessor of the property; TJX was the named lessee, still primarily liable on the Lease; and Ames was the tenant in possession, having been assigned TJX's rights and liabilities and having agreed to indemnify TJX.

In April 1990, Ames and its subsidiaries filed petitions under Chapter 11 of the Bankruptcy Code in the Southern District of New York, and on October 9, 1990, pursuant to an order of the Bankruptcy Court, Ames and Zayre Central rejected the Lease. (Am. Compl. ¶ 9.) Soon thereafter, Bond Street wrote TJX objecting to the rejection, and stating that Bond Street still looked to TJX to make the lease payments. (Am.Compl. ¶ 13.) While Bond Street and TJX argued over their rights and responsibilities concerning the property, a water pipe broke causing extensive damage to the building. (Am. Compl. ¶¶ 19–22.)

### B.

The Court now turns to the procedural history. In February 1991, Bond Street filed a Complaint in the Supreme Court of New York for the County of Nassau. Bond street intended to name TJX, but mistakenly

named and served the TJX Companies, Inc., a Nevada corporation ("TJX Nevada"). After TJX informed Bond Street that TJX Nevada was not a party to the Lease, Bond Street filed an Amended Complaint (the "Complaint") substituting TJX as defendant.[2] (Pl.Mot. to Remand pp. 6–7.)

After the Complaint was filed, but before TJX was served, TJX Nevada filed a petition for removal in the United States District Court for the Eastern District of New York. The only basis for jurisdiction alleged in the petition was diversity. (Id. p. 7.) The District Court after removal ordered the case transferred to the Southern District of New York, and suggested that the case be referred to the Bankruptcy Court where the Ames bankruptcy proceeding was filed. (Id. p. 8.) The case was transferred and referred. Bond Street filed claims in Bankruptcy Court for the delinquent rent payments and for the damage caused to the building and moved for summary judgment. (Id. p. 9.)

On January 12, 1993, the Bankruptcy Court granted Bond Street's motion for partial summary judgment on the issue of TJX's liability for Lease payments. (Id. p. 10.) However, on August 10, 1993, the Bankruptcy Court, having earlier granted TJX's motion for reconsideration, vacated the summary judgment order. (Id. p. 11.)

On December 9, 1993, the Bankruptcy Court dismissed Count II of the Complaint concerning the water damage. On December 15, 1993, the Bankruptcy Court dismissed the entire Complaint with prejudice. (Id. pp. 12–13.) On December 23, 1993, Bond Street appealed to this Court pursuant to 28 U.S.C. § 158. Bond Street now moves this Court to remand on the basis of defective removal. (Id. p. 13.)

### II.

### A.

It must be stated at the outset that the parties are not, and were not, diverse. All

1. TJX was actually known as Zayre Corp. until the company changed its corporate name to TJX on June 20, 1989. (Am.Compl. ¶ 13.)

2. Apparently TJX Nevada and TJX share the same corporate name, The TJX companies, Inc.

parties concede that Bond Street, TJX Nevada,[3] and TJX are incorporated, or have their principal place of business, in the state of Delaware. The Court must now decide whether the jurisdiction and the final judgment of the Bankruptcy Court can be preserved on the basis of jurisdiction other than diversity or whether this Court must remand. This involves a two-step analysis: may the Court look for an alternative basis of jurisdiction, and, if so, does one exist?

### B.

Removal is a privilege, not a right, conferred by the Congress to protect the defendant from litigating in a hostile forum. The privilege is waived if not exercised within 30 days of the filing of the original complaint. 28 U.S.C. § 1446(b). Likewise the plaintiff's opportunity to petition for remand is a privilege, also waived if not exercised within 30 days. 28 U.S.C. § 1447(c). This structure reveals Congress' intent that removal be resolved early and not revisited.

■ However, in keeping with the fundamental principle that federal courts are courts of limited jurisdiction, Congress allows the parties, or the court, to challenge the court's subject matter jurisdiction until final judgment is entered. *Id.* When removal is attacked prior to final judgment and the alleged basis of subject matter jurisdiction is found wanting, the Court must remand the case without consideration of an alternative basis. *CBS, Inc. v. Snyder*, 762 F.Supp. 71, 73 (S.D.N.Y.1991); *see also Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269 (2d Cir.1994).

■ On the other hand, once the federal court enters final judgment, the appellate court must expand the scope of its review and uphold the removal if *any* basis of jurisdiction existed at the time of removal. *Grubbs v. General Elec. Credit Corp.*, 405 U.S. 699, 702, 92 S.Ct. 1344, 1347, 31 L.Ed.2d 612 (1972):

> Where after removal a case is tried on the merits without objection and the federal court enters judgment, the issue in subsequent proceedings on appeal is not whether the case was properly removed, but

whether the federal district court would have had original jurisdiction of the case had it been filed in that court.

### C.

■ Bond Street argues that *Grubbs* notwithstanding, the Second Circuit's recent decision in *Lupo v. Human Affairs Int'l, Inc.* necessarily restricts the scope of this Court's review, and precludes upholding removal on any basis other than that alleged in the original petition. 28 F.3d 269 (2d Cir.1994). Such a reading is too broad.

In *Lupo*, plaintiff filed a state claim in state court. Defendant petitioned for removal claiming that the Employee Retirement Income Security Act ("ERISA") preempted plaintiff's claims. After removal, the District Court for the District of Connecticut dismissed the complaint finding the claims preempted. Plaintiff appealed. 28 F.3d at 271.

On appeal, the Second Circuit held that the ERISA defense did not create subject matter jurisdiction for removal purposes. At oral argument, defendant suggested that if federal question jurisdiction did not exist, the Court should consider whether diversity existed. The Court of Appeals considered defendant's argument but refused to look beyond the complaint and the petition for removal to determine whether diversity jurisdiction existed. As neither document alleged the necessary jurisdictional amount, the court remanded the case to the state court. *Id.* at 272–74.

The court's holding in *Lupo* is very narrow and specific: when final judgment has been entered, but the appellate court finds that the original basis for removal was invalid, the appellate court will consider alternative bases for jurisdiction, but can look no further than the complaint and the removal petition. This Court finds itself in precisely the same procedural posture as the Court of Appeals in *Lupo*.

### III.

Having resolved that this Court may look for an alternative basis of jurisdiction, the Court now determines whether one exists.

---

**3.** TJX Nevada, although incorporated in Nevada, has its principal place of business in Delaware.

## A.

■ The Complaint alleges the following chronology of events. Bond Street's predecessors enter into a lease with TJX. TJX assigns its interest to Zayre Central. Ames purchases Zayre Central and "assume[s] the obligations as assignee of the lease." Ames files for relief under Chapter 11, and pursuant to order of the Bankruptcy Court, Ames rejects the Lease. (Am.Compl. ¶¶ 4–9). In Count II of the Complaint, Bond Street alleges that TJX's negligence allowed a water pipe to burst and damage the property. (Am.Compl. ¶¶ 17–22).

On the face of the Complaint, then, Bond Street alleges that its lease agreement with TJX has been assigned to Ames, that Ames has assumed the rights and obligations of the lessee, that Bond Street did not object to the assignment, and that Ames has been the tenant for a number of years.

The only important fact omitted from the Complaint is that Ames was contractually bound to indemnify TJX for all liability arising from the Lease. The indemnification agreement is an important and potentially dispositive fact, but under *Lupo*, the Court may not consider the undenied existence of the agreement when reviewing the propriety of removal.

■ The petition for removal, couched exclusively in terms of diversity, lends nothing to TJX's argument that this case was, or is, related to a Bankruptcy proceeding; and therefore, need not be considered.

## B.

■ The Court finds that the Complaint alleges facts establishing the necessary relationship between the parties to demonstrate that this case is related to the Ames bankruptcy proceeding.

■ The District Courts have "original but not exclusive jurisdiction of all civil proceedings ... *related to* cases under Title 11." 28 U.S.C. § 1334(b) (emphasis added). Congress intended that federal courts give a broad interpretation to the meaning of "related to" jurisdiction. *In re Salem Mortgage Co.,* 783 F.2d 626, 634 (6th Cir.1986). "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984); *In re Cuyahoga Equip. Corp.,* 980 F.2d 110, 114 (2d Cir.1992) ("The test ... is whether [the] outcome might have any 'conceivable effect' on the bankrupt estate.").

■ There are no cases on point regarding the situation where a lessee is *not* indemnified by its assignee, as the Court must assume here. However, the cases agree that when the debtor-assignee has agreed to indemnify the lessee, the case is related to the bankruptcy. *See Pacor,* 743 F.2d at 984; *In re Salem,* 783 F.2d at 635. This follows from the potential liability flowing directly from the indemnification agreement.

Other cases suggest, without holding, that the absence of an indemnification agreement does not preclude "related to jurisdiction." *In re Salem,* 783 F.2d at 635 ("[T]the statute does not require a finding of definite liability of the [debtor] as a condition precedent to holding an action related to a bankruptcy proceeding."); *Apex Inv. Assoc., Inc. v. TJX Cos., Inc.,* 121 B.R. 522 (Bankr.N.D.Ill.1990).

In *Apex Inv.,* also involving TJX as defendant and arising out of the Ames bankruptcy, the Bankruptcy Court found that the claim was related to the bankruptcy. The court relied in part on the indemnity agreement, but also noted that " 'even in the absence of an explicit indemnification agreement, an action by a creditor against a guarantor of a debtor's obligations will necessarily affect that that [sic] creditor's status vis a vis other creditors, and administration of the estate therefore depends upon the outcome of that litigation.' " 121 B.R. at 525 (*citing Pacor,* 743 F.2d at 995).

In another bankruptcy proceeding involving non-debtors and no express indemnity agreement, the Bankruptcy Court also found "related to" jurisdiction:

> The legislative history makes it clear that § 1334(b), taken as a whole, constitutes an extraordinarily broad grant of jurisdiction to the Article III District Court. Said

grant covers virtually all litigation in which a debtor or the estate could be expected to have an interest, and vests the court with a complete or pervasive jurisdiction over all matters having a relationship with or a significant bearing on the bankruptcy case.

*In re Funding Syst. Asset Management Corp.,* 72 B.R. 595, 597 (Bankr.W.D.Pa.1987).

■ In light of the broad scope of 28 U.S.C. § 1334(b), and the factual relationship between Bond Street, TJX, and Ames as alleged in the Complaint, the Court finds that this case was related to the bankruptcy at the time TJX filed the petition for removal. Even barring an indemnification agreement, the lessees will normally have a claim against the debtor-assignee for losses caused by the assignee's breach. Such a claim falls within the broad scope of § 1334(b)'s "related to" jurisdiction.

### C.

■ Bond Street makes two final arguments. First, that the claims are no longer related to the bankruptcy because the final Plan approved by the Bankruptcy Court insulates Ames from any further liability arising out of this Complaint by establishing a fund. Second, Bond Street suggests that by agreeing to indemnify Ames for their share of the liability, the claims are no longer related to the bankruptcy. Both arguments however ignore the critical question of timing. The issue is not what the effect on the debtor's estate is now, but rather what does the Complaint reveal might have been the effect on the debtor's estate at the time TJX petitioned for removal. Bond Street attempts to show that there is no "related to" jurisdiction *now,* when the proper question is: was there "related to" jurisdiction *then?*

SO ORDERED.