In re **MASTERWEAR CORP.,**
et al., **Debtors.**

Masterwear **Corp.,** et al., **Plaintiffs,**

v.

Rubin **Baum** Levin **Constant &**
Friedman, **Defendant** and
Third **Party** Plaintiff,

v.

Albert **Mushkin,** Norman **Bernard**
and **Brad** Bernard, **Third**
Party **Defendants.**

No. 97 B **47084(SMB)** to
97 B **47088(SMB).**
Adversary No. 98–8724A.

United States Bankruptcy Court,
S.D. New York.

Nov. 5, 1999.

Rubin Baum Levin Constant & Friedman, New York, Paul H. Aloe, Of Counsel, Pro Se.

Gordon, Gordon & Schnapp, P.C., New York, Elliot Schnapp, Of Counsel, for Norman Bernard and Brad Bernard.

Albert Mushkin, New York, Pro Se.

## MEMORANDUM DECISION DENYING MOTION FOR SUMMARY JUDGMENT AND DISMISSING THIRD PARTY ACTION

STUART M. BERNSTEIN,
Bankruptcy Judge.

The debtors (collectively "Masterwear") commenced this adversary proceeding to recover a prepetition payment made to the defendant Rubin Baum Levin Constant & Friedman ("Rubin Baum"). Rubin Baum impleaded the Third Party Defendants for indemnity. After Rubin Baum settled the primary action, it moved for summary judgment on its indemnity claims. For the reasons that follow, its motion is denied, and the third party action is dismissed without prejudice.

### BACKGROUND

The present dispute grows out of Rubin Baum's earlier representation of the Third Party Defendants who controlled the debtors (collectively "Masterwear") until they were ousted by Signal Capital Corporation ("Signal"). A fuller discussion of these events is set forth in *Masterwear Corp. v. Angel & Frankel, P.C. (In re Masterwear Corp.)*, 233 B.R. 266 (Bankr.S.D.N.Y.1999), familiarity with which is assumed. Briefly, Signal, a Masterwear shareholder, brought a derivative suit against the Third Party Defendants. The Third Party Defendants retained Rubin Baum, signing a letter retainer agreement, dated February 27, 1997, in which they agreed to pay the law firm's fees and expenses. Between February 1, 1997 and June 30, 1998, Rubin Baum billed $485,485.48 in fees and expenses but "wrote off" $137,411.50, leaving a balance of $348,073.98. Rubin Baum received $70,000.00 in payment from the Third Party Defendants and Mrs. Bernard, and an additional $78,784.43 from Masterwear.

After new management caused Masterwear to file the chapter 11 cases on October 27, 1997, Masterwear sued Rubin Baum to recover the $78,784.43. The complaint alleged four fraudulent transfer claims, a conversion claim and a claim that the payment exceeded the reasonable value of the services. Rubin Baum answered, denying the material allegations in the complaint, and asserting an affirmative defense that it had also represented the debtor in other matters, and that the transfers at issue were fair consideration for those services. (*See Affidavit of Paul H. Aloe in Support of Motion for Default Judgment or, in the Alternative, for Summary Judgment*, sworn to July 8, 1999 ("*Aloe Affidavit*"), Ex. G, ¶¶ 39–40.) The answer also demanded a jury trial. (*Id.* at p. 7.)

One week later, Rubin Baum served and filed a third party complaint, impleading the Third Party Defendants for indemnity. The third party complaint alleged two counts, one based upon the common law, (*Aloe Affidavit*, Ex. H, ¶¶ 1–6), and the other based upon the retainer agreement. (*Id.*, ¶¶ 7–9.) Each count alleged that if Rubin Baum was "ultimately determined" to be liable to Masterwear, then the Third Party Defendants would be liable, jointly and severally, to Rubin Baum. (*Id.*, ¶¶ 6, 9.) The Third Party Complaint did not request a jury trial. It did, however, attach the Answer and Jury Demand. (*See id.*, ¶ 2.)

Rubin Baum subsequently agreed to pay Masterwear $60,000.00 in full settlement of the primary claim.[1] Brad Bernard, acting *pro se*, served written objections.[2] In addition, the Bernards objected through

---

1. Rubin Baum contends that the Third Party Defendants agreed to fund the settlement, and then backed out. The relevance of this is not apparent. An agreement to settle is inadmissible to prove liability. Fed.R.Evid. 408.

2. Brad Bernard purported to assert his *pro se* objection on behalf of himself and his father,

Norman. (*See Objections of Norman Bernard & Brad Bernard, Third Party Defendants, to Proposed Order Approving Compromise of Dispute between the Debtors & Rubin Baum Levin Constant & Friedman*, dated July 12, 1999 ("*Objections*")).

their lawyer, and Mushkin objected *pro se*, at the hearing on the settlement. The Bernards expressed concern that the settlement would prejudice their defense of the third party action. (*See* Transcript of hearing, held July 22, 1999, at 11–12.) Rubin Baum agreed. It argued that the settlement foreclosed subsequent litigation because the Third Party Defendants had done nothing to defend against the primary action, and in fact, had defaulted in the third party action. (*See id.* at 20–22.) Distinguishing between the effect of the settlement and the effect of the alleged default in pleading, (*see id.* at 22–23), I approved the settlement and directed a hearing on the pending motions to enter a default judgment against the Third Party Defendants, or in the alternative, to award summary judgment to Rubin Baum. (*See id.*, 24, 29.) Rubin Baum subsequently withdrew its default motion against the Bernards,[3] and I denied the default motion directed at Mushkin.[4] Thus, the only remaining motion is the one by Rubin Baum seeking summary judgment.

## DISCUSSION

Having settled the primary action, Masterwear has no further interest in this adversary proceeding, and the sole dispute lies between non-debtors. As a result, I raised the question of my jurisdiction with the remaining parties. Rubin Baum contends that I have "related to" and supplemental jurisdiction over the third party action, should exercise it and grant summary judgment. The Bernard *Objections* questioned my subject matter jurisdiction, (*Objections*, ¶ 2(a)), and maintained that if I have jurisdiction, I should abstain from exercising it. As explained below, I agree that I have jurisdiction, but in light of my denial of Rubin Baum's summary judg-

3. The Bernards also withdrew a motion for sanctions lodged against Rubin Baum.

4. Mushkin claims he answered the complaint on December 20, 1998, and submitted a copy of his answer in response to the default motion. (*See* Letter dated Aug. 24, 1999 and attachment)(ECF Doc. # 31.) He never filed

ment motion, I decline to exercise further jurisdiction and leave the parties to their state court remedies.

## A. Subject Matter Jurisdiction

### 1. "Related to" or Non–Core Jurisdiction

The bankruptcy court is, like other federal courts, one of limited jurisdiction. *Celotex Corp. v. Edwards*, 514 U.S. 300, 307, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). Congress has prescribed the scope of bankruptcy jurisdiction over civil proceedings (as opposed to cases) in 28 U.S.C. § 1334(b), limiting it to proceedings that arise in a bankruptcy case or arise under the bankruptcy law (*i.e.*, core proceedings) and proceedings that relate to a bankruptcy case (*i.e.*, non-core proceedings). The original complaint in this case contained a mix of core and non-core claims, but in either case, the Court had subject matter jurisdiction over all of the claims asserted by Masterwear.

The jurisdiction over the third party claims is a harder question. The bankruptcy court's non-core jurisdiction is broad (but not limitless), *Celotex Corp. v. Edwards*, 514 U.S. at 307–08, 115 S.Ct. 1493, and extends to a proceeding whose outcome may have any "conceivable effect" on the debtor's estate. *In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 114 (2d Cir.1992); *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984). Under this test,

> [a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the

this answer, and it is not clear that he ever served it. I note that he is appearing *pro se*, has attended several court hearings, and actively participated in this matter. It has been clear from the outset that he intends to defend against the third party claim, and the dispute should be decided on the merits.

handling and administration of the bankrupt estate.

*Id.; accord Back v. AM General Corp. (In re Chateaugay Corp.)*, 213 B.R. 633, 638 (S.D.N.Y.1997); *Bond Street Assocs. v. Ames Dep't Stores, Inc.*, 174 B.R. 28, 32 (S.D.N.Y.1994).

▆▆▆ In litigation involving non-debtors, "relatedness" often turns on the estate's obligation to indemnify the losing party. Where the obligation to indemnify is contractual and absolute, the third party litigation is "related to" the bankruptcy case. *E.g., Hunnicutt Co. v. TJX Cos. (In re Ames Dep't Stores, Inc.)*, 190 B.R. 157, 160–61 (S.D.N.Y.1995); *Apex Inv. Assoc., Inc. v. TJX Cos.*, 121 B.R. 522, 526 (N.D.Ill.1990); *In re Brentano's, Inc.*, 27 B.R. 90, 92 (Bankr.S.D.N.Y.1983), *rev'd. & remanded on other grounds*, 36 B.R. 90 (S.D.N.Y.1984); *see Weisman v. Southeast Hotel Properties Ltd. Partnership*, No. 91 Civ. 6232, 1992 WL 131080, at *3 (S.D.N.Y. June 1, 1992). The debtor's liability need not, however, be definite. *Kelley v. Nodine (In re Salem Mortgage Co.)*, 783 F.2d 626, 634 (6th Cir.1986). "Related to" jurisdiction also exists if a disputed or conditional indemnity claim has a "reasonable legal basis." *In re Chateaugay Corp.*, 213 B.R. at 640; *compare Bond Street Assocs. v. Ames Dep't Stores, Inc.*, 174 B.R. at 28, 33 (lease dispute between landlord and debtor's assignor was "related to" debtor-assignee's bankruptcy because lease assignor "will normally have a claim against the debtor-assignee for losses caused by the assignee's breach") *and Weisman v. Southeast Hotel Properties Ltd. Partnership*, 1992 WL 131080, at *4 ("related to" jurisdiction existed over third party dispute where claims asserted against defendants came within provisions of debtor's limited indemnification agreement) *with In re Chateaugay Corp.*, 213 B.R. at 639–40 (no jurisdiction where defendant might assert indemnity claim against reorganized debtor based upon a theory of *alter ego* liability) *and Wall v. Merrill Lynch Pierce Fenner & Smith, Inc.*, No. 92 Civ. 0387, 1992 WL 77625, at *2 (S.D.N.Y. Mar. 26, 1992)(no jurisdiction over third party action where debtor's indemnification agreement specifically excepted the fraud and fiduciary duty breaches alleged in the complaint).

Here, the Third Party Defendants have articulated a "reasonable legal basis" to recover indemnification from Masterwear should they be forced to pay Rubin Baum. According to Rubin Baum, the legal fees and expenses at issue were incurred on behalf of the Third Party Defendants defending Signal's derivative action.[5] In that action, Signal contended that the Third Party Defendants breached their fiduciary and contractual duties by unlawfully extending their employment contracts and taking excessive and unauthorized compensation and reimbursement for personal expenses. *In re Masterwear Corp.*, 233 B.R. at 270 & n. 1. The Third Party Defendants defended the derivative action with great vigor given the amount of Rubin Baum's legal fees.

Under its by-laws, Masterwear is obligated to indemnify the Third Party Defendants to the full extent allowed by Delaware law. (*Aloe Affidavit*, Ex. F, Art. VII, § 7.) Delaware law permits a corporation to indemnify the Third Party Defendants for expenses "actually and reasonably incurred" if the Third Party Defendants "acted in good faith and in a manner [they] reasonably believed to be in or not opposed to the bests interests of the corporation." Even if the Third Party Defendants are adjudged liable in the derivative suit, they may still recover indemnity if the facts and circumstances warrant it. *See* Del.Code Ann., tit. 8, § 145(b)(1998). Thus, the Third Party Defendants may ultimately be entitled to recover some or all of their legal fees

---

5. The derivative action complaint has been amended, and the former derivative claims have been asserted directly by Masterwear.

and expenses from Masterwear under the by-laws. Accordingly, the third party action could have a "conceivable effect" on Masterwear, and "related to" jurisdiction exists over the third party action.

## 2. Supplemental Jurisdiction

Rubin Baum also argues that supplemental jurisdiction exists over the third party claim. Supplemental jurisdiction is a statutory concept that expands on the earlier judge-made doctrines of ancillary and pendent jurisdiction. *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir.1994). Where the district court has original jurisdiction over a civil action, it may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III... [and] include claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a).

In *Klein v. Civale & Trovato, Inc. (In re Lionel Corp.)*, 29 F.3d 88, 92 (2d Cir.1994), the Court implicitly held that the bankruptcy court could exercise supplemental jurisdiction. There, the debtor hired a contractor to work on premises that it leased. After the debtor failed to pay for the construction work, the contractor filed a mechanic's lien against the landlord's property. The debtor and the landlord commenced an adversary proceeding that, among other things, sought an order declaring the mechanics' lien invalid. *Id.* at 90. The landlord also asserted a lease-based claim against the debtor arising from its failure to discharge the lien. *Id.* at 92. Addressing subject matter jurisdiction, the Second Circuit ruled that the bankruptcy court had core jurisdiction over the landlord's claim against the debtor, and supplemental jurisdiction over the landlord's claim against the contractor. *Id.*

While the bankruptcy court's exercise of supplemental jurisdiction is not entirely clear,[6] *see In re Boco Enters.*, 204 B.R. at 411 n. 2, I will assume that I have it, in addition to "related to" jurisdiction, to adjudicate the third party claim. The question remains whether I should exercise it. Because the answer is intertwined with the resolution of the summary judgment motion—which I have the jurisdiction to decide—I will turn to that motion.

## B. The Summary Judgment Motion

■ Rubin Baum's summary judgment motion is straightforward. The Third Party Defendants agreed to pay their legal fees and expenses. Masterwear didn't pay these fees on the Third Party Defendants' behalf (actually, they were paid and then returned through the settlement), and consequently, the Third Party Defendants must pay them. In support, Rubin Baum provided detailed time records demonstrating that it has substantial, unpaid legal claims against the Third Party Defendants well in excess of the $60,000.00 at issue. Thus, if this were simply an effort to recover $60,000.00 under a contract claim

---

6. After *Lionel*, the bankruptcy court's supplemental jurisdiction was questioned by the Fifth Circuit Court of Appeals. *See Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562 (5th Cir.1995). The most compelling argument against supplemental jurisdiction focuses on the language in 28 U.S.C. § 157(a), which states:

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

By order dated July 10, 1984, Acting Chief District Judge Robert J. Ward made the reference authorized by section 157(a).

Assuming that the district court can exercise supplemental jurisdiction when it has original bankruptcy jurisdiction, it never referred its supplemental jurisdiction to the bankruptcy court, and section 157(a) would not authorize it anyway. In fact, the district court could no more refer its supplemental jurisdiction that it could refer its copyright, criminal or diversity jurisdiction. *See In re Walker*, 51 F.3d at 572–73.

for unpaid legal fees, Rubin Baum would be entitled to prevail.

The problem is that this is not a contract case, nor does it concern just any $60,-000.00. Rubin Baum must demonstrate that the $60,000.00 that it repaid to Masterwear represented the return of legal fees and expenses incurred on behalf of the Third Party Defendants and covered by the retainer agreement. If, on the other hand, it represented legal fees for work performed for Masterwear, Rubin Baum cannot recover indemnity in the third party action even though the Third Party Defendants owe a large contract debt for their own legal fees.[7] In addition, the Third Party Defendants can defeat the indemnity claim by showing that Rubin Baum would not have been liable to Masterwear under the original complaint.[8]

According to Norman Bernard, Masterwear's former president, Rubin Baum provided a significant amount of legal services to Masterwear on various matters, including general corporate work, labor relations and banking. (*Affidavit of Norman Bernard*, sworn to Aug. 20, 1999, (*"Bernard Affidavit"*), at ¶ 5.)[9] The deposition testimony of Jeffrey Mann, Esq., a former Rubin Baum partner, supports the Third Party Defendants' claim. (*See Reply Declaration of Paul H. Aloe in Support of Motion for Default Judgment or, in the Alternative, for Summary Judgment and in Opposition to Cross–Motion for Sanctions*, dated Sept. 23, 1999 (*"Reply Aloe Declaration"*), Ex. B, at 67–69.) Perhaps must important, Rubin Baum asserted an affirmative defense that it had represented

Masterwear in other matters, and the transfers were fair consideration for those payments. This allegation has never been amended, and stands as a conclusive judicial admission. *United States v. GAF Corp.*, 928 F.2d 1253, 1259 (2d Cir.1991); *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir.1985); *United States v. McKeon*, 738 F.2d 26, 31 (2d Cir.1984).

Rubin Baum's reply papers attempt to undercut the force of this admission and the premise that it represented Masterwear. Rubin Baum states that it pled this affirmative defense after its former partner, Mr. Mann, advised the firm that he had done work for Masterwear as well as the individuals without opening a separate matter. (*Aloe Reply Declaration*, ¶¶ 4–5.) However, discovery "failed to corroborate that Mr. Mann had rendered separate legal services for the Debtors," and Masterwear had separate legal counsel in the underlying litigations. (*Id.*, ¶ 11.)

As noted, Rubin Baum never amended its third party complaint. Further, discovery is incomplete, and Mann testified that documents exist reflecting his work for Masterwear. (*Id.*, Ex. B, at 69.) In addition, Mann never said he represented Masterwear in the underlying litigations; he said he consulted with management about certain corporate governance and other disputes between Masterwear and Signal that became the subject of Delaware litigation. (*Id.*, Ex. B, at 68.) He also testified that he rendered services to Masterwear in connection with its relation-

---

7. Rubin Baum's own confusion over its theory was evident at the argument of the summary judgment motion. Its counsel maintained that the Third Party Defendants could not defend by showing that the transfer to Rubin Baum was not wrongful because the claim arises under a contract. (Transcript of hearing, held Oct. 7, 1999, at 7–8.)

8. Fed.R.Civ.P. 14(a) permits a third party defendant to assert any defenses he has to the original plaintiff's claim. The Third Party Defendants did not assert any defenses to Masterwear's claims in their *pro se* answers,

but the Bernards have since retained counsel and asserted these defenses in their motion papers.

9. The *Bernard Affidavit* attaches, as Ex. G, Rubin Baum's submission to the mediator appointed in this case. I have not considered the submission because its disclosure violates the confidentiality provisions in the Court's order adopting the mediation program. (*See Amended General Order* (re: Adoption of Procedures Governing Mediation of Matters in Bankruptcy Cases & Adversary Proceedings), dated Jan. 17, 1995, at ¶ 5.0.)

ship with the Bank of New York. (*Id.*) In this regard, Third Party Defendants continued to handle Masterwear's day-to-day banking affairs even after they were replaced as directors. *See In re Masterwear Corp.*, 233 B.R. at 270 n. 3. It would not be surprising, therefore, that they may have turned to Rubin Baum in connection with their official duties.

Consequently, I cannot award summary judgment. When faced with the motion, a court does not weigh the evidence or resolve disputed issues of fact. Instead, a court must assess whether any factual issues exist, and must resolve any ambiguities or inferences against the moving party. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11–12 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *see Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1187 (2d Cir.1987). The Third Party Defendants have proferred credible evidence raising triable issues with respect to (1) whether Rubin Baum provided services to or for the benefit of Masterwear, and (2) whether these services were consideration for all or part of the $60,000.00 repaid to Masterwear. Under the circumstances, material, disputed factual issues exist.

## C. Dismissal and Abstention

Having denied summary judgment, I must decide whether to retain jurisdiction over this third party dispute, or abstain from further involvement. This really poses two separate questions: should I decline to exercise supplemental jurisdiction and should I abstain from exercising "related to" jurisdiction? The analyses overlap, and support sending this dispute to another forum.

### 1. Supplemental Jurisdiction

 Pursuant to 28 U.S.C. § 1367(c)(3), a court may decline, in its discretion, to exercise supplemental jurisdiction where it has dismissed all of the claims over which it has original jurisdiction. The relevant considerations include

judicial economy, convenience to the parties, fairness and comity. *Marcus v. AT & T Corp.*, 138 F.3d 46, 57 (2d Cir.1998); *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1191 (2d Cir.1996); *Porges v. Gruntal & Co. (In re Porges)*, 44 F.3d 159, 163 (2d Cir.1995); 16 James W. Moore, *Moore's Federal Practice* § 106.66[2], at 106–89 to 106–90 (2d ed. 1999)("*Moore's*"). As a rule, if the predicate claim is dismissed before trial, dismissal is appropriate. *Marcus v. AT & T Corp.*, 138 F.3d at 57; *Purgess v. Sharrock*, 33 F.3d at 138; *see Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)(discussing pendent jurisdiction); *see generally* 16 *Moore's* § 106.66[2], at 106–89 to 106–90. Nevertheless, the concept is flexible, and the decision must be made on a case by case basis after examining all of the circumstances. *Id.*

 Initially, comity does not weigh in favor of dismissing the third party claim, and the convenience of the parties is a neutral factor. Concerns of comity support dismissal when the case raises unsettled issues of state law best left to a state court. *Id.*, § 106.66[4], at 106–94.1; *see Independent Bankers Ass'n of N.Y. State, Inc. v. Marine Midland Bank*, 757 F.2d 453, 464 (2d Cir.1985); *In re Boco Enters., Inc.*, 204 B.R. at 412. The case does not present any unsettled issues of New York law. Further, there should be little difference to the parties in litigating this dispute in this Court or one mile due north in the state supreme court.

Judicial economy and fairness, however, weigh heavily in favor of dismissal. First, retaining jurisdiction over the third party claim will lead to unnecessary duplication. Rubin Baum holds a contractual right to recover its unpaid legal fees. It claims that the Third Party Defendants owe approximately $260,000.00, but its third party claim only seeks the $60,000.00 paid under the settlement. It would have to commence—and the Third Party Defendants

will have to defend—a second action to recover the balance.

■ Second, the case cannot be tried in this Court, and will have to be transferred for trial to the district court. Rubin Baum demanded a jury trial in its answer. The demand covers the issue of Rubin Baum's liability to Masterwear. This same question is germane to the defense of the third party claim, and is encompassed by the jury demand. *See Rosen v. Dick*, 639 F.2d 82, 91–92 (2d Cir.1980); *Davidson Pipe Co. v. Laventhol & Horwath*, 125 F.R.D. 363, 367 (S.D.N.Y.1989); *see generally* 8 *Moore's* § 38.52[2][c][i], at 38–253. But the bankruptcy court cannot conduct a jury trial without the express consent of all parties, *see* 28 U.S.C. § 157(e), and given the Third Party Defendants' position on abstention, unanimous consent is unlikely.

Further, dismissal is neither wasteful nor unfair. I ruled on Rubin Baum's summary judgment motion because it would have wasted the parties' time and effort to refuse. It does not follow that my consideration (and denial) of the motion makes dismissal a waste of judicial resources. *Cf. Robertson v. The Neuromedical Ctr.*, 161 F.3d 292, 296 (5th Cir.1998)(district court did not abuse its discretion in declining to exercise supplemental jurisdiction over state law claims after granting summary judgment to defendants on federal claims); *Hankins v. The Gap, Inc.*, 84 F.3d 797, 802–03 (6th Cir.1996)(same). The case is not trial ready, I have not invested a great deal of judicial time or energy on the underlying factual and legal issues, and the parties will not have to duplicate their prior efforts in state court. Rubin Baum's work to date consists primarily of accumulating its time records, and it can offer these same records at trial. The parties have not completed discovery, and any discovery they have obtained in this action can be used in state court. *See Robertson v. The Neuromedical Ctr.*, 161 F.3d at 296; *Allard v. Arthur Andersen & Co. (U.S.A.)*, 957 F.Supp. 409, 425 (S.D.N.Y.1997). Finally, any gain resulting from my retention

of the case will be lost once it is transferred to the district court for a jury trial. Accordingly, to the extent I have supplemental jurisdiction, I decline to exercise it.

## 2. Permissive Abstention

■ I also decline to exercise "related to" jurisdiction for many of the same reasons. Pursuant to 28 U.S.C. § 1334(c)(1), a court may abstain from hearing a proceeding within its jurisdiction "in the interest of justice, or in the interest of comity with State courts or respect for State law." Permissive or discretionary abstention was intended to codify nonbankruptcy judicial abstention doctrines. *Coker v. Pan American World Airways (In re Pan American Corp.)*, 950 F.2d 839, 845 (2d Cir.1991). The factors that govern discretionary abstention include

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted 'core' proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the court's] docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*Peterson v. 610 W. 142 Owners Corp. (In re 610 W. 142 Owners Corp.)*, No. 94 B 44488, 1999 WL 294995, *3 (S.D.N.Y. May

11, 1999)(quoting *In re Craft Architectural Metals Corp.*, 115 B.R. 423, 432 (E.D.N.Y. 1989) ).

Rubin Baum's third party action is a garden variety state law contract dispute between non-debtors, and under the foregoing factors, abstention is appropriate. First, abstention will not affect the bankruptcy case. Assuming the Third Party Defendants acquire a fixed and liquidated indemnification claim against Masterwear, the $60,000.00 claim will have little effect on any distribution in light of the millions of dollars of unsecured debt in this case. (Factor 1). Second, state law issues predominate in this contract dispute. (Factor 2). Third, the third party proceeding is non-core, and lacks an independent basis for federal jurisdiction.[10] (Factors 5, 7). Fourth, the dispute is remote from Masterwear's case. It can be severed and tried separately in state court, and if the Third Party Defendants acquire an indemnification claim, they can assert it in the bankruptcy case. If Masterwear disputes their claim, Masterwear can reserve for it under the plan and still confirm the case. (Factors 6, 8). Fifth, the third party dispute is a burden on this Court's docket, and the Court can put its limited resources to better use resolving disputes that have a direct affect on the many cases before it. (Factor 9). Sixth, the issue regarding Rubin Baum's liability to Masterwear is triable by a jury. (Factor 11). Finally, the action involves nondebtors. (Factor 12).

The countervailing considerations are slim. The state law issues are neither unsettled nor complex. (Factor 3). There are no related proceedings pending in non-bankruptcy fora. (Factor 4).[11] Finally, Rubin Baum did not engage in forum shopping. (Factor 10). Weighed against the overwhelming number and significance of the factors that dictate the appropriateness of abstention, these contrary considerations pale. Accordingly, I will abstain as a matter of discretion in exercising "related to" jurisdiction.

## CONCLUSION

The motion for summary judgment is denied, and the third party action is dismissed without prejudice. Settle order on notice.

---

**10.** Even if supplemental jurisdiction provided a basis to hear the dispute, the considerations informing the exercise of discretion under 28 U.S.C. § 1367(c)(3) call for dismissal.

**11.** If an action were pending in a state court, and the state court could resolve it in a timely fashion, mandatory abstention might be required under 28 U.S.C. § 1334(c)(2). *See Burger Boys, Inc. v. South Street Seaport Ltd. Partnership (In re Burger Boys, Inc.)*, 183 B.R. 682, 685 n. 2 (S.D.N.Y.1994) (discussing the elements of mandatory abstention).